[No. 20347-6-III.  Division Three.  May 23, 2002.]

MIKE M. JOHNSON, INC., *Appellant*, v. SPOKANE COUNTY, *Respondent*.

*Patrick A. Sullivan, John H. Guin,* and *Carl E. Hueber* (of *Winston & Cashatt, P.S.*), for appellant.

*Patrick M. Risken, Lisette F. Carter,* and *Mark A. Wheeler* (of *Evans, Craven & Lackie, P.S.*), for respondent.

SCHULTHEIS, J. — This contract dispute arises out of two sewer projects awarded to Mike M. Johnson, Inc., by Spokane County after a competitive bidding process. Because it failed to reach a negotiated agreement with the County over construction fees not included in the original contract, Johnson filed a lawsuit for damages incurred as a result of the County's alleged breach of contract. At issue was approximately $500,000 in expenses for labor, building materials, and equipment charges. Johnson's claims were dismissed on summary judgment when the trial court determined Johnson had not followed the protest and/or claim procedures outlined in the original contract between

the County and Johnson. Although we agree Johnson did not strictly comply with the contractual procedures, we find there are genuine issues of material fact regarding whether the County's actual notice of Johnson's claims resulted in a waiver of the formal notice requirements. Consequently, we determine summary judgment was improperly granted and reverse and remand for a trial on the merits.

## FACTS

In April 1998, Johnson was awarded a bid to construct two sewer projects for Spokane County. One was called the Apple Valley Sewer Project and the other was the Wolfland project. Both parties anticipated that Johnson would initially work on the Apple Valley project, then move its crews and equipment to the Wolfland project. The Apple Valley project was scheduled to start on May 4 and had a completion date of September 3. The Wolfland project was to commence on June 30 and be completed by October 8. County employees were at the various work sites associated with the projects on a daily basis to monitor progress and to inspect the work performed.

Problems arose soon after construction began on the Apple Valley project when Johnson's equipment dug up and damaged water and phone utility lines in a specific area designated in the original contract. The County directed Johnson to repair the water lines, which was done. The phone line problem, however, required a complete redesign of one of the roads in the sewer project. This redesign is the subject matter of the County's Change Order (CO) No. 3. The redesign increased the width of the road by 100 percent and resulted in changes to the grade and elevation as well. Johnson's crews were on standby while the redesign process took place because the original construction contract limited how many streets Johnson could have torn up at any one time. The situation resulted in considerable increases in time and money for Johnson. The delay on the Apple Valley project also caused delay in commencing the

Wolfland project. The financial costs associated with the phone line relocation and street redesign and the resulting deleterious effects on the established time line for the projects led to several change orders being issued under the contract.

During the redesign process and implementation, Johnson submitted several written notices advising the County that its actions were delaying Johnson's work on the sewer projects. The following events are included in the record:

| | |
|---|---|
| June 4, 1998 | County issues CO No. 3 |
| June 26, 1998 | Johnson notifies County that utility-caused delays add costs to project; compensation expected |
| July 5, 1998 | County requests from Johnson additional information regarding pricing and time |
| July 14, 1998 | Johnson supplies County with requested information; seeks approval to continue working |
| July 16, 1998 | County advises Johnson to submit claims and protests pursuant to contract terms |
| July 24, 1998 | Johnson again summarizes delays on project for County |
| August 7, 1998 | County completes redesign work under CO No. 3 |
| August 14, 1998 | Johnson informs County that redesigned road still problematic |
| August 25, 1998 | Johnson submits request for $98,000 and time extension of 50 days |
| September 2, 1998 | Johnson submits signed copy of CO No. 3 with added reservation of rights clause |
| September 26, 1998 | Johnson resubmits claims of August 25, 1998 |

| | |
|---|---|
| October 20, 1998 | Johnson submits expenses related to CO No. 2 |
| November 3, 1998 | Johnson submits revised bill to County |
| November 6, 1998 | Johnson submits second revised bill to County |
| November 7, 1998 | Johnson sends demand letter to County for payment |
| December 22, 1998 | Johnson's attorney itemizes expenses for County |
| December 23, 1998 | County attorney agrees to submit "package" to County |

Initially, Johnson and the County appeared to negotiate in good faith regarding updated time lines for completion of the sewer projects and monies owed for work performed and materials provided by Johnson under CO No. 3 to the original contract. Letters discussing the issues flowed back and forth between Johnson and County personnel. Later, negotiations continued through legal counsel. The record suggests that by December 1998, the parties were still negotiating the outcome of Johnson's claims for additional remuneration and working days on the project pursuant to the contract. The extra time to perform the projects was needed by Johnson so the County would not assess liquidated damages against it because the project did not come in on time. When the negotiation process came to a halt, Johnson filed a complaint for damages against the County.

The County filed an answer, which included counterclaims against Johnson. The issues raised in the counterclaim are not at issue in this appeal. The County claimed the unexpected utility work should have been anticipated by Johnson and factored into its bid both financially and in the time needed to complete the two projects. Arguing that Johnson failed to follow the contractual procedures regarding protests, changed conditions and/or extensions of time that would have allowed the County to consider Johnson's claims for additional time and remuneration under the

Apple Valley and Wolfland projects, the County filed a motion for summary judgment. Johnson also filed a cross-motion for partial summary judgment. The County's motion was granted and Johnson's was denied. The court later clarified the order on summary judgment. Johnson filed a motion for reconsideration, which was also denied.

ANALYSIS

We are asked to consider whether the trial court erred when it granted the County's motion for summary judgment dismissal of Johnson's claims for damages. We are convinced it did.

An order granting summary judgment is reviewed de novo. We engage in the same inquiries as did the trial court, e.g., whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. *Marquis v. City of Spokane*, 130 Wn.2d 97, 105, 922 P.2d 43 (1996). We consider the evidence and reasonable inferences therefrom in a light most favorable to the nonmoving party. If there is a dispute as to any material fact, then summary judgment is improper. *Id.* On the other hand, when reasonable minds could reach but one conclusion from the admissible facts in evidence, summary judgment should be granted. *Id.*

As a general rule, Washington law requires contractors to follow contractual notice provisions unless those procedures are waived. *Absher Constr. Co. v. Kent Sch. Dist. No. 415*, 77 Wn. App. 137, 142, 890 P.2d 1071 (1995). Either party to a contract may waive any contract provision that is made for its benefit. *Reynolds Metal Co. v. Elec. Smith Constr. & Equip. Co.*, 4 Wn. App. 695, 700, 483 P.2d 880 (1971). Such a waiver generally need not be expressly declared, but may be implied from a party's conduct. *Id.* Waiver by conduct, however, requires unequivocal acts evidencing an intent to relinquish known rights. *Absher*, 77 Wn. App. at 143.

*Actual notice*

Citing *Bignold v. King County*, 65 Wn.2d 817, 822, 399 P.2d 611 (1965), Johnson maintains that actual notice is an exception to the strict enforcement of contractual notice requirements. It argues that the County had actual knowledge of the changed conditions caused by the utility lines because it had personnel on the jobsite on a daily basis. Additionally, it notes the County was forced to redesign the road in order to avoid the buried phone lines. The County then ordered (and supervised) Johnson's construction of the redesigned road through a series of change orders. Johnson contends that because the County had actual notice of Johnson's claims for extra remuneration and time under the original contract, its complaint for damages should not have been dismissed on summary judgment for lack of strict compliance with the contract's notice requirements.

In *Bignold*, a contractor entered into an agreement with King County to construct a county road. Once excavation commenced, it was determined that wet soil and huge boulders would hinder the construction process, adding time and money to the cost of completion. *Id.* at 819. The parties to the construction contract did not anticipate the presence of these latent, subsurface conditions. *Id.* at 822. When apprised of the unforeseen condition, King County ordered Bignold to continue construction, including the extra work. *Id.* Because the conditions were unforeseen by the parties and not addressed by the contract, yet the extra work was ordered completed by King County, the *Bignold* court allowed the contractor to recover the costs associated with the extra work. *Id.* Johnson claims the same rule of law should apply under the facts of this case.

The County asks us to review the wording of section 1-04.5, which sets forth the notice requirement that Johnson was required to follow in filing a protest of a contractual term. This section required a signed, written notice of protest before the protested work began, followed by a detailed supplement within 15 calendar days stating: (1) the date of

the protested order; (2) the nature and circumstances that caused the protest; (3) the contract provision supporting the protest; (4) the estimated dollar cost of the protested work; and (5) an analysis of the progress schedule showing the schedule change or disruption.

It is undisputed that the County received written notice, albeit not in the specific format required by the contract, from Johnson throughout the sewer construction process regarding increased time and money expenditures pursuant to the change orders. However, because Johnson did not follow the proper contractual notice procedures, the County argues the summary judgment dismissal was appropriate. We disagree.

The County was well aware of the problems the buried utility lines caused Johnson's crews working on the Apple Valley sewer project since County inspectors and project managers were on site every day. When efforts to work around the buried lines failed, the County directed the lines be moved and then completely redesigned the road. As noted above, the redesigned road increased the existing road width by 100 percent and new curbing was designed and installed. Additionally, the grade and elevation of the existing road had to be changed to prevent flooding. Although not fully developed in the record, it appears the County finished the road redesign process on August 7, 1998. We are not told when Johnson commenced work on the completed redesign although we know it informed the County on August 14 the redesign was still problematic. On August 25, Johnson submitted a claim for over $98,000 and requested 50 extra days to perform the sewer projects. There is no question the County had actual notice of Johnson's claims.

Following the *Bignold* actual notice analysis and looking at the facts in the light most favorable to Johnson, an unresolved question exists regarding whether the County's actual notice of Johnson's claims should act as a waiver to Johnson's strict compliance with the contract terms. This is even more apparent when one looks at how the County

continued to direct and demand Johnson's compliance with the various change orders under threat of termination and nonpayment. We believe the resolution of this issue rests upon material facts upon which reasonable minds might differ. Therefore, summary judgment was inappropriately granted.

■ The County also claims the time and money spent during the road redesign does not equate to extra compensation under the original contract because Johnson should have anticipated these types of unforeseen contingencies and padded its bid to compensate. Viewing these facts in the light most favorable to Johnson, at a minimum, there is an unresolved question of fact regarding whether Johnson could or should have anticipated and planned for this type of contingency, both in terms of contract time and money. As a result, summary judgment dismissal was not proper.

*Waiver*

■ Lastly, Johnson claims the County implicitly waived the contractual notice requirements through its actions, i.e., by supervising Johnson's compliance with the change orders. As noted above, even after Johnson submitted informal claims for extra contract days and remuneration for the work performed under CO No. 3, the County continued to order Johnson to complete the work under the threat of terminating its contract. Additionally, after the sewer project work was performed the County continued to negotiate with Johnson to reach resolution of its claims, long after the strict terms of the contract precluded resolution of the outstanding protests and/or claims. Johnson contends these actions constitute the County's implicit waiver of the formal contract protest and/or claim procedures.

The record reveals that a letter writing flurry occurred between the parties throughout the contract period and beyond. In early August 1998, around the time the finishing touches were being added to the road redesign, the County

sent Johnson written notice that it would not consider any protest or claim that did not follow the formal contractual notice procedures. However, after that initial letter, correspondence continued between Johnson and the County, as well as between legal counsel for both parties, with no mention made that the discussions of the claims were no longer timely. Yet now the County contends that because Johnson did not submit its claims within 15 days of commencing the work on CO No. 3, the issue can no longer be decided. If that was its theory all along, it is puzzling why the County continued the negotiation process with Johnson regarding final payment for work performed on CO No. 3 for several months after the sewer project was completed. Viewing the evidence in the light most favorable to Johnson, a question of fact arises regarding the County's intent to waive formal notice on the protest and/or claim procedures.

To both parties' credit, it appears they each made a good faith attempt to resolve the monetary conflicts without having to resort to the formal claim process and/or litigation. As late as December 22-23, 1998, legal counsel exchanged correspondence regarding the parties' disputes. In a letter dated January 27, 1999, legal counsel for the County agreed to meet with Johnson's legal counsel in an attempt to negotiate a settlement. It was at this time that the County took the position it takes here on appeal—that Johnson was not owed any extra compensation for work under CO No. 3 because it did not comply with the formal contractual requirements regarding inadequate and/or untimely notice of protests or disputes. This appears a bit disingenuous. Viewing the facts in the light most favorable to Johnson, a question of fact exists regarding whether the County's active participation in directing Johnson's work on the sewer projects and its continued settlement negotiations long after Johnson's time period for submission of protests and/or claims had expired was sufficient evidence of the County's intent to waive the formal contract procedures.

The trial court erred when it dismissed Johnson's claims for damages without considering the legal doctrines of actual notice and waiver. Consequently, we reverse the summary judgment dismissal and remand for a trial on the merits.

BROWN, C.J., and KATO, J., concur.

Review granted at 148 Wn.2d 1009 (2003).