78 P.3d 161 (2003)
150 Wash.2d 375
MIKE M. JOHNSON, INC., Respondent,
v.
The COUNTY OF SPOKANE, a Washington State Municipal Corporation, Petitioner,
US West Communications, Inc., Defendant.
No. 72900-0.
Supreme Court of Washington, En Banc.
Argued June 10, 2003.
Decided October 23, 2003.
*162 Richard W. Kuhling, Spokane, for defendant.
Patrick Mark Risken, Mark Anthiny Wheeler, Spokane, for petitioner Spokane County.
Patrick Arthur Sullivan, John Henry Guin, Carl Edward Hueber, Winston & Cashatt Lawyers, Spokane, for respondent.
Paul Russell Cressman, John P. Ahlers, Bruce Andrew Cohen, Seattle, amicus curiae on behalf of Utility Contractors Ass'n, Smacna-Western Wash. Inc., Cascade & Puget Sound Chapters of, Associated Gen. Contractors.
Herbert Peter Sorg, Stanton Phillip Beck, Lane, Powell, Spears, Lubersky, LLP, Seattle, amicus curiae on behalf of State Dept. of General Administration.
Richard Ottesen Prentke, Graehm Christopher Wallace, Katrina Robertson Kelly, Seattle, amicus curiae on behalf of State School Const.
MADSEN, J.
The trial court below granted summary judgment dismissal of Mike M. Johnson, Inc.'s (hereinafter MMJ) claims for additional compensation arising out of two separate sewer installation contracts with Spokane County. The Court of Appeals reversed, finding that issues of material fact exist regarding whether Spokane County's "actual notice" of MMJ's claims excused MMJ from complying with the contractual claim procedures, as well as whether the county waived compliance as evidenced by its conduct.
We hold that "actual notice" is not an exception to compliance with mandatory contractual protest and claim provisions. Further, since the record does not contain any conduct by Spokane County evidencing its intent to waive MMJ's compliance with the protest and claim procedures, we hold that no question of material fact exists regarding waiver. We reverse the Court of Appeals.

FACTS
In April 1998, Spokane County awarded MMJ bids to construct two sewer projects for the county: the Apple Valley Sewer project and the Wolfland project. MMJ and Spokane County entered into contracts for both projects, which incorporated the Washington State Department of Transportation's 1996 Standard Specification for Road, Bridge, and Municipal Construction, as modified by the special provisions contained in the project manuals for each project. Both the county and MMJ anticipated that MMJ would perform the projects in sequence. Construction on Apple Valley was to begin on May 27, 1998, and be completed in 88 working days; and construction on Wolfland was to begin on June 29, 1998, and last 70 working days. MMJ planned to utilize two crews, moving one crew to the Wolfland project once construction was underway on Apple Valley.
At the preconstruction conference on April 23, 1998, the county informed MMJ that a road improvement district project was in progress to redesign Seventh Avenue  a roadway in the Apple Valley project. The redesign would not affect the sewer installation but would widen the road and revise the storm drain system. MMJ began construction on the Apple Valley project, starting on Fourth Avenue with a plan to follow with Sixth Avenue and then Seventh Avenue.
The contracts authorized the county to change MMJ's work within the general scope of the contract at any time through a change order. On June 4, 1998, the county submitted the revised design of Seventh Avenue to *163 MMJ and issued proposed change order number 3. Change order number 3 required MMJ to widen Seventh Avenue and change the elevation and grade, and the order included a proposal to increase MMJ's compensation by $69,319 and add eight working days to the project.[1] MMJ made no objection or protest to the design change, proposed compensation, or altered schedule and began the work under change order number 3. Thereafter, it encountered buried U.S. West telephone lines during construction on Seventh Avenue.[2] MMJ's work on Seventh Avenue came to a halt while the county and U.S. West worked out the utility conflict.
Both the Apple Valley and Wolfland contracts required MMJ to use mandatory notice, protest, and formal claim procedures for claims of additional compensation, time extensions, and changed conditions. Specifically, the contracts required MMJ to give a signed written notice of protest of work required by a change order, other written order, or oral order from the engineer before doing any work. Clerk's Papers (CP) at 116-17 (Standard Specification Section 1-04.5). The contracts required MMJ thereafter to:
Supplement the written protest within 15 calendar days with a written statement providing the following:
a. The date of the protested order;
b. The nature and circumstances which caused the protest;
c. The contract provisions that support the protest;
d. The estimated dollar cost, if any, of the protested work and how that estimate was determined; and
e. An analysis of the progress schedule showing the schedule change or disruption if the Contractor is asserting a schedule change or disruption.
Id. at 116. The contracts further provided that MMJ accept all requirements of a change order by endorsing it, writing a separate acceptance, or not protesting it as required by section 1-04.5. Id. MMJ's failure to protest constituted "full payment and final settlement of all claims for contract time and for all costs of any kind, including costs of delays, related to any work either covered or affected by the change." Id. Additionally, the contracts stated that "[b]y failing to follow the procedures of this section and Section 1-09.11, the Contractor completely waives any claims for protested work." Id. at 117.
Section 1-09.11 provided a mandatory formal claim procedure if the protest procedures of section 1-04.5 failed to provide MMJ with a satisfactory resolution. CP at 119-22 (Standard Specification Section 1-09.11). The formal claim procedures required MMJ to submit a claim to the project engineer in sufficient detail to enable the engineer to ascertain the basis and amount of the claim. CP at 119. At a minimum, MMJ was required to submit 10 items of specific information to support a claim, including a notarized statement to the project engineer swearing to the truth and veracity of the submitted claim (the "Final Contract Voucher Certification"). Id. Under the contracts, MMJ's failure to submit the required information with a final contract voucher certification was "a waiver of the claims by the Contractor." Id. Furthermore, the contracts explicitly stated that "[f]ull compliance by the Contractor with the provisions of this section is a contractual condition precedent to the Contractor's right to seek judicial relief." CP at 122.
*164 Instead of following the contract requirements, MMJ sent the county a letter on June 26, 1998, addressing seven concerns in bullet point form, only one of which discussed the Seventh Avenue delay:
Our work on 7th Avenue is being delayed by U.S. West. Their phone lines are too shallow and must be relocated to accomodate [sic] the revised Change Order No. 3 plan. Their impacts are causing additional delays and costs to our work, and we are finding it increasingly difficult to accommodate their deficiencies.
CP at 226. MMJ did not file a written protest statement as required under section 1-04.5 at this time or anytime thereafter.
In response to MMJ's letter, on July 16, 1998, the county advised MMJ by letter that "if you believe that you have a claim for additional compensation within this contract please submit this claim per section 1-09.11(2) of the standard specifications (a copy of this section is enclosed) and it will be evaluated." CP at 124-28. On July 24, 1998, MMJ responded by summarizing various project delays and their impacts. The entire reference to MMJ's concerns with Seventh Avenue stated, "US West disrupted our work on 7th Ave. when they had to relocate all their shallow and/or unknown services." CP at 236. In closure, MMJ informed the county that it was developing "a detailed progress schedule" which would "identify the major impacts to costs, time, and sequence" and "summarize the delays and additional costs" for which it expected to be compensated. CP at 237. The record, however, reveals that a "detailed progress schedule" was never prepared or sent to the county.
On August 3, 1998, the county notified MMJ that it believed the utility conflicts should not impact the overall schedule of the projects. The county's position was based on contract language placing the risks associated with mislocated or unknown utilities on the contractor[3] and on the contractor's obligation to locate utilities before digging, pursuant to RCW 19.122.030. On August 7, 1998, the county directly responded to MMJ's July 24 letter, stating:
To the extent that [MMJ] may consider that letter any sort of formal notification of a claim pursuant to the contract, a request for additional time, a request for a change order, or a request for any other remedy allowed by the contract, the letter is rejected because it is too general and nonspecific regarding any relief or remedy which may have been requested. In this regard, you are referred to the applicable contract specifications. All requests for additional time to complete the contract, additional compensation or change order must be submitted within the time permitted and in the form specified in the contract documents. Spokane County simply cannot accept a letter, such as the July 24, 1998 letter, as anything other than an attempt to cause Spokane County to acquiesce in what might be later claimed to be some sort of attempt to modify our contract. As we have repeatedly advised you, Spokane County must insist that you follow the terms and conditions of our contract in every respect on both of these projects.
CP at 589-92.
On August 14, 1998, MMJ notified the county that it returned to work on Seventh Avenue and again encountered existing utilities, putting work on standby. The letter simply noted that "we expect to be compensated for all costs and time associated with maintaining this road while waiting for others to complete their work." CP at 240. On August 25, 1998, MMJ's attorney, Patrick Sullivan, submitted requests for $98,000 and a time extension of 50 days to the county's attorney, Jerry Cartwright. CP at 252-54. He included a spreadsheet entitled "Cost Time Impacts," which contained twenty-nine line items of dates occurring three and a half months earlier without supporting explanations and without any reference to the contract or to whether responsibility under the contract laid with MMJ or the county. Id. The Seventh Avenue entry stated, "phone lines too shallow, line F" and noted 120 hours of time at an hourly rate of $188.91, amounting to a total cost of $22,669.20. Id. at 254.
*165 On September 1, 1998, Mr. Cartwright wrote Mr. Sullivan, stating that the purpose of the letter was to provide "an effort to facilitate a means of timely completion of the project and settlement of the parties' claims to date" and should not "be taken as a formal response to or recognition of the claims" in Mr. Sullivan's memo. CP at 257. Additionally, he explicitly stated that the county did not "intend [a] waiver of any claim or defense which the county might currently have against [MMJ]." Id. Thereafter, MMJ submitted several letters claiming that the county owed it additional compensation but never submitted a formal claim as required by section 1-09.11 of the contract. On December 22, 1998, Mr. Sullivan provided Mr. Cartwright with a letter summarizing MMJ's claims, stating "[t]his letter is being provided under Rule of Evidence 408 and is intended for settlement purposes only." CP at 300. Thus, the letter on its face was not intended as a formal claim under contract section 1-09.11(2), and even if it were, it did not comply with section 1-09.11 because it failed to include the requisite information and final contract voucher certification.
The county answered MMJ's settlement attempts by letter on December 23, 1998 and January 27, 1999. On December 23, Mr. Cartwright stated that it was the county's position that MMJ "has failed to perfect any claims in this claim and has repeatedly failed and/or refused to follow the procedure set forth in the contract for submitting claims." CP at 386. He emphasized that "[a]ll through this process of trying to get these jobs finished ... we have made it very clear that the County would not be waiving any of its contractual rights, claims or defenses." Id. Mr. Cartwright, however, agreed to forward MMJ's claims to the county but notified MMJ that "if this is an attempt to submit claims pursuant to the terms of the contract, please take notice that it is the county's position that the claims submitted are not timely." Id. On January 27, 1999, Mr. Cartwright delivered a letter to Mr. Sullivan containing information for their January 29 meeting. CP at 594-95. He reiterated:
In agreeing to meet with you ... it should be understood that the County wishes to negotiate with you and your clients but does not intend to waive any claim or defense which it might have, under the contract documents or at law, including... failure by [MMJ] to follow the contract requirements regarding claims/notice/disputes.
Id. The letter stated that the information was submitted for purposes of discussing settlement and "in an attempt to avoid litigation." Id.
Throughout this lengthy period of correspondence, MMJ failed to comply with the contractual protest procedures required under section 1-04.5 and, additionally, failed to follow the formal claim procedures under section 1-09.11, which were a "contractual condition precedent to [MMJ's] right to seek judicial relief." CP at 122. The record establishes that MMJ's president, Mike Johnson, admitted he knew of the protest and claim provisions but could not say whether he actually complied. CP at 626-32. MMJ's contract administrator, Ben Price, testified by affidavit that he discussed the contract provisions with Mr. Johnson, but Mr. Johnson did not care to comply because compliance was too time consuming. CP at 633-34. Instead, Mr. Johnson's tactic was to "complain[] by letter stating generally that MMJ expected to be paid for extra work, and then to sort through the mess at the end of the contract." Id. at 634.
Contemporaneously with these discussions, MMJ and the county discussed many other issues unrelated to change order number 3. For example, the county removed a portion of the Wolfland project from MMJ, and the parties were in negotiations over the county's purchase of supplies already procured for the project by MMJ. MMJ and Spokane County were unable to work out their disputes, and on February 19, 1999, MMJ filed a complaint for damages against the county. MMJ alleged claims for additional compensation arising out of the contract, as well as claims for unpaid contract balances on both projects. The county filed an answer, asserting affirmative defenses and counterclaims against MMJ. In regard to MMJ's claims for additional compensation, the county argued that MMJ failed to comply with mandatory *166 contractual protest and claim provisions, barring it from seeking judicial relief at this time.
The county moved for summary judgment on MMJ's claim for additional compensation, and MMJ filed a cross-motion for partial summary judgment. On June 19, 2000, the trial court granted the county's motion and dismissed with prejudice MMJ's claim. On October 30, 2000, the court issued a supplemental order clarifying its order granting summary judgment and also denied MMJ's motion for reconsideration. The court clarified that no genuine issue of material fact exists as to whether MMJ failed to comply with the contractual protest and claim procedures, which were mandatory for seeking additional compensation; thus, as a matter of law, the court dismissed with prejudice MMJ's claims for additional compensation. The court stated that it did not make any specific findings of fact or conclusions of law as to the related issues of actual notice, prejudice, equity, substantial compliance, or reservation of rights.
The issues which remain for trial include MMJ's claims for unpaid contract balances on both projects, the county's counterclaims for liquidated damages and other back charges, as well as the county's third-party claims against U.S. West. The trial court's supplemental order notes that the dismissal of MMJ's claims does not prejudice or impair MMJ's right to assert affirmative defenses arising under the contract in response to the county's counterclaims.
On June 21, 2001, the trial court issued a stipulation and order certifying the summary judgment order for appeal and staying the remaining action pending appellate review. MMJ appealed. The Court of Appeals determined that the trial court improperly granted summary judgment on MMJ's claims for additional compensation. Mike M. Johnson, Inc. v. County of Spokane, No. 20347-6-III, 111 Wash.App. 1051, 2002 WL 1038808, slip op. at 2 (Wash.Ct.App. May 23, 2002). The court held dismissal improper because issues of material fact exist regarding whether the county's "actual notice" of MMJ's claims excuses MMJ from complying with the mandatory contractual protest and claim procedures and whether the county's conduct of negotiating a settlement with MMJ implied its waiver of enforcement of the procedures. Id. at 4-5. Initially, the court did not publish the opinion, but on July 2, 2002, it granted motions to publish. Mike M. Johnson, Inc. v. Spokane County, 112 Wash.App. 462, 49 P.3d 916 (2002). We granted review.

ANALYSIS
This case presents two issues for the court's resolution: (1) whether Spokane County's "actual notice" of MMJ's protests and claims acts as an exception to MMJ's compliance with the mandatory protest and claim procedures under the contract and (2) whether summary judgment dismissal was inappropriate because an issue of material fact exists regarding whether the county's conduct implied a waiver of the contractual protest and claim procedures.[4]

Actual Notice
Washington law generally requires contractors to follow contractual notice provisions unless those procedures are waived. Absher Constr. Co. v. Kent Sch. Dist. No. 415, 77 Wash.App. 137, 142, 890 P.2d 1071 (1995). A party to a contract may waive a contract provision, which is meant for its benefit, and may imply waiver through its conduct. Reynolds Metals Co. v. Elec. Smith Constr. & Equip. Co., 4 Wash.App. 695, 700, 483 P.2d 880 (1971). Waiver by conduct, however, "requires unequivocal acts of conduct evidencing an intent to waive." Absher, 77 Wash.App. at 143, 890 P.2d 1071 (citing *167 Birkeland v. Corbett, 51 Wash.2d 554, 565, 320 P.2d 635 (1958)).
This court, as well as the state appellate courts, has historically upheld the principle that procedural contract requirements must be enforced absent either a waiver by the benefiting party or an agreement between the parties to modify the contract. See Bjerkeseth v. Lysnes, 173 Wash. 229, 22 P.2d 660 (1933) (affirming dismissal of contractor's claim for extra work where there was no written order as required by contract and no waiver of the requirement); Ellis-Mylroie Lumber Co. v. Bratt, 119 Wash. 142, 153, 205 P. 398 (1922) (where no required written order of architect exists, "[t]he only theory upon which the contractors would be able to recover would be that of a waiver"); Wiley v. Hart, 74 Wash. 142, 146-48, 132 P. 1015 (1913) (where owner has not waived the required written order of architect, owner could not be liable for extra costs); Sime Constr. Co. v. Wash. Pub. Power Supply Sys., 28 Wash.App. 10, 621 P.2d 1299 (1980) (affirming dismissal of contractor's claim where contractor failed to comply with contractual notice procedures); Swenson v. Lowe, 5 Wash.App. 186, 188, 486 P.2d 1120 (1971) ("A building contract provision requiring a written order for alterations or extras will be enforced. However, the requirement of a writing is for the benefit of the owner, and the owner, either expressly or by conduct, may waive such a requirement." (Citation omitted.))
MMJ argued to the Court of Appeals, and maintains before this court, that when an owner has actual notice of a contractor's protest or claim, that notice, in and of itself, excuses the contractor from complying with mandatory contractual protest and claim procedures. MMJ contends that the decision of Bignold v. King County, 65 Wash.2d 817, 822, 399 P.2d 611 (1965) establishes an "actual notice" exception.
the [owner] became immediately aware of the changed conditions as soon as they developed and ordered the contractor to perform the changes and extra work involved... [u]nder such conditions, the county cannot defeat recovery by a contractor even if no written notice was given.
Id. at 822, 399 P.2d 611.
Contrary to MMJ's contention, the Court of Appeals in Bignold did not hold that the owner's actual notice of the changed condition in and of itself excused the contractor from complying with the contractual notice provisions. Rather it was the owner's knowledge of the changed conditions coupled with its subsequent direction to proceed with the extra work that evidenced its intent to waive enforcement of the written notice requirements under the contract. Bignold does not establish an "actual notice" exception and actually reaffirms the long established rule requiring contractors to follow contractual notice provisions unless those procedures are waived by the owner.
In addition to the Bignold decision, MMJ contends that other Washington cases establish an "actual notice" exception to contractual compliance. However, as with Bignold, the authorities MMJ cites do not establish such a rule but rather hold that a contractor must comply unless those provisions are waived by the benefiting party. See Lindbrook Constr., Inc. v. Mukilteo Sch. Dist. No. 6, 76 Wash.2d 539, 542-44, 458 P.2d 1 (1969) (failure to comply with contractual notice requirement did not bar contractor's right to recovery additional compensation where "squarely notice in writing had been waived" by the agent's conduct). See also Am. Sheet Metal Works, Inc. v. Haynes, 67 Wash.2d 153, 159, 407 P.2d 429 (1965) ("There is evidence in the instant case indicating that appellant authorized, permitted, and directed respondent to perform the work in question.... The trial court did not err in considering the condition waived."); Morango v. Phillips, 33 Wash.2d 351, 357-58, 205 P.2d 892 (1949) ("If any extras were furnished at the express request of the respondent, recovery can be had therefor, as such request would amount to waiver of the contractual provision."); Barbo v. Norris, 138 Wash. 627, 635-36, 245 P. 414 (1926) (actions of parties amounted to waiver); A. Gehri & Co. v. Dawson, 64 Wash. 240, 243, 116 P. 673 (1911) (approving jury instructions stating "the contract means that unless the other party *168 waives, by his conduct and acts, the right to demand such writing, there shall be no recovery"); Crowley v. United States Fid. & Guar. Co., 29 Wash. 268, 274, 69 P. 784 (1902) (contractual requirement for writing waived by actions of owner).
The county contends that the precise issue in this case, whether a contractor's failure to comply with mandatory contractual claim procedures precludes later recovery, has been addressed before, and the courts consistently hold that, absent waiver, failure to comply bars relief. See Clevco, Inc. v. Mun. of Metro. Seattle, 59 Wash.App. 536, 542, 799 P.2d 1183 (1990) ("failure to comply with the requirements of the change order provision is fatal to a later claim for compensation based on extra work"); Sime Constr. Co. v. Wash. Pub. Power Supply, 28 Wash.App. 10, 16, 621 P.2d 1299 (1980) (claim for additional compensation due to change order not timely as required by contract). The county specifically points to Absher, 77 Wash.App. at 142, 890 P.2d 1071, as directly analogous to this case.
In Absher, a subcontractor claimed that the district had provided "overwhelmingly defective plans," causing it additional expenses. Id. at 141, 890 P.2d 1071. The contract, however, contained mandatory dispute procedures, requiring the contractor "to give the District prompt and detailed written notice of any claims 14 days after events giving rise to the claims ... before any lawsuit could be commenced." Id. at 139, 890 P.2d 1071. The requirement could not be waived except by written waiver signed by the owner, and the contractor's failure to comply with the written notification requirement was "an absolute waiver of any claims arising from or caused by delay." Id. at 140, 890 P.2d 1071. Furthermore, acceptance of final payment constituted a waiver of all unidentified claims, as well. Id. After the contractor accepted final payment, it attempted to submit the subcontractor's claim to the district. Id. at 140-41, 890 P.2d 1071. The district contended that the contractor waived all claims because it failed to follow the mandatory claim procedures under the contract. The trial court granted summary judgment for the district, and the contractor appealed, arguing that material issues of fact remained regarding notice, waiver, and prejudice. Id. at 141, 890 P.2d 1071.
The Court of Appeals affirmed. Addressing the contractor's argument that the district's notice of the claims excused the subcontractor's noncompliance with the claim procedures, the court found that the subcontractor had submitted "forms, comments, concerns and objections" that did not include the amount of the claim or length of delay, as required by the contract. Id. at 143, 890 P.2d 1071. The court held that these "were not sufficient to meet the contract written notice requirements." Id. While the court recognized that the district did not actually have notice of these concerns and claims, it noted that "[e]ven if the District had known of the concerns, those concerns were not claims under the contract." Id. Accordingly, the court held that the owner's actual notice of concerns did not excuse the contractor from complying with the contractual claim procedures. Id.
The court next considered the contractor's argument that the architect and subconsultant, acting as agents of the district, had waived compliance with the claim procedures. Id. at 143-44, 890 P.2d 1071. The court noted that any waiver would have to be by conduct, since the district had not submitted a written waiver as required by the contract. Id. at 143, 890 P.2d 1071. The court, however, found that the contractor "cites no specific conduct by the District evidencing an intent to waive the contract provisions explicitly denying the authority of the architect and its subconsultant to act as its agent." Id. at 144, 890 P.2d 1071. Because the district did not waive the notice requirements or designate the architect as its agent who could waive the requirements, the contractor was required to comply with the notice provisions. Id.
In this case, MMJ submitted letters to the county indicating its concern over change order number 3 and that it expected additional compensation for its work under the order. However, as in Absher, these letters did not provide the information required by the contract to support a protest or a formal claim. The county, furthermore, *169 told MMJ throughout this lengthy period of correspondence that MMJ's vague references to problems were insufficient for the county to deal with as claims. MMJ's general notice to the county that it expected additional compensation did not amount to claims under the contract, nor did it excuse MMJ from complying with the contractual claim procedures.
MMJ argues, though, that the Court of Appeals correctly found that "an unresolved question exists regarding whether the county's actual notice of [MMJ's] claims should act as a waiver to [MMJ's] strict compliance with the contract terms." Johnson, No. 20347-6-III, 2002 WL 1038808, slip op. at 4. MMJ is incorrect.
A waiver of a contract provision must be made by the party benefiting from the provision. Here, the county stood to benefit from the mandatory protest and claim procedures; thus, only the county could waive MMJ's compliance with the procedures. MMJ simply could not waive enforcement of the provisions for the county, and MMJ's notifying the county that it had concerns does not in any way evidence the county's intent to waive the contract's requirements. Moreover, to hold that a contractor's notice of protest to the owner serves to excuse the contractor from complying with mandatory claim procedures would render contractual claim requirements meaningless. There would be no reason for compliance, as the contractor could merely assert general grievances in order to secure a later claim.
We hold that "actual notice" is not an exception to contract compliance.

Waiver
MMJ alternatively argues that a genuine issue of material fact exists regarding whether the county waived MMJ's compliance with the contractual protest and claim provisions through its conduct.
As stated, a party to a contract may waive a contract provision meant for its benefit, but waiver by conduct "requires unequivocal acts of conduct evidencing an intent to waive." Absher, 77 Wash.App. at 143, 890 P.2d 1071 (citing Birkeland, 51 Wash.2d at 565, 320 P.2d 635). The county argues that the record unequivocally indicates that it intended no waiver of any rights under the contract or of MMJ's compliance with the mandatory protest and claim provisions.
The county is correct. In correspondence between the county and MMJ, the county repeatedly asserted that it did not intend a "waiver of any claim or defense" or "of any other remedy or contract provision." CP at 257 (letter dated Sept. 1, 1998); CP at 386 (letter dated Dec. 23, 1998); CP at 594 (letter dated Jan. 27, 1999). Moreover, as late as December 23, 1998, the county notified MMJ that it "has failed to perfect any claims in this claim and has repeatedly failed and/or refused to follow the procedure set forth in the contract for submitting claims." CP at 386. In the same correspondence, the county stated that "[a]ll through this process... we have made it very clear that the County would not be waiving any of its contractual rights, claims or defenses." Id.
MMJ also urges that the county's continued negotiations may evidence its intent to waive MMJ's compliance. The parties were not only discussing concerns over change order number 3, however, but were discussing numerous issues and protests throughout this period of time. Adopting MMJ's view would have the county unrealistically halt all discussions for fear of evidencing its intent to waive mandatory claim provisions under the contract. We decline to reach such a result, as it would detrimentally impact all concerned. We find no question of material fact as to whether the county waived contractual compliance.

CONCLUSION
MMJ's notice to the county concerning its grievances did not excuse MMJ from complying with the contractual requirements. Furthermore, the evidence does not establish a question of whether the county waived enforcement of the claim procedures through its conduct, including its continued negotiations with MMJ.
Accordingly, we reverse the Court of Appeals and hold summary judgment dismissal of MMJ's contractual claims proper.
ALEXANDER, C.J., BRIDGE, OWENS, and FAIRHURST, JJ., concur.
*170 CHAMBERS, J. (dissenting).
Here the owner directed the contractor to do additional work, was fully informed of all relevant information known by the contractor, and observed the contractor perform the work. It is unjust to declare as a matter of law that the contractor is not entitled to fair compensation merely because the contractor did not also conform to additional highly technical claims procedures. It is not merely unjust, it is out of step with Washington law. The majority's articulation of the relevant rule fails to encompass significant factors necessary for a full and fair resolution of such cases. Whether viewed as a conflict over contractual compliance or a conflict over waiver, this case requires a full hearing to determine the material facts before the law can be applied.
Under the majority's holding today, an owner can demand additional work outside the scope of the original contract, observe the contractor perform that work, discuss the work with the contractor, and yet deny fair compensation for services rendered if, within 15 days, and before the owner's plans are even completed, the contractor fails to submit a written request for additional time for the demanded work or fails to produce an itemized invoice in a precise technical format.
This is unreasonable and out of step with the actual practice of construction and construction law. Certainly, contracts should be enforced as written. But counterveiling legal principles have compelled courts to allow recovery of fair compensation by the contractor where the owner directs the work be done and the owner is not prejudiced by the contractor's failure to abide by the technical requirements of submitting a claim for payment.
The contractor, Mike M. Johnson, Inc. (MMJ), presented facts upon which a reasonable juror could find compliance with the contractual requirements regarding notice. Alternately, a reasonable juror could find facts that would establish that Spokane County waived strict compliance with the contract's requirements for claim submission. Because I believe resolution of this case is improper on summary judgment, I respectfully dissent.

FACTS
MMJ was the low bidder for two public works projects in a competitive bidding process. The projects, Apple Valley and Wolfland, required MMJ to lay sewer lines, and then grade and pave the streets.
After the contracts were awarded but before the project began, the county learned that a road improvement district (RID) had been formed for Seventh Avenue, one of the streets in the Apple Valley project. This substantially changed the scope of the original work. The RID doubled the proposed width of Seventh Avenue and added gutters and curbs. At a preconstruction conference on April 23, 1998, the county informed MMJ of the RID and told MMJ that a change order and new design would be prepared. The proposed change order was presented to MMJ on June 4, 1998, although it was not finalized until September 1998. In the change order, the county proposed allotting an additional eight days and $69,319 for the extra work on Seventh Avenue.
The construction schedule provided that the Apple Valley and Wolfland jobs would be performed in sequence, beginning with Apple Valley. MMJ was to start on Fourth Avenue, go on to Sixth Avenue, and then to Seventh Avenue. When Seventh was complete, all three streets would be paved by MMJ's paving subcontractor. The paving subcontractor would only pave a minimum of three streets at a time.
In June, MMJ installed the main sewer line on Seventh Avenue. In late June, MMJ began subgrade preparations for the roadway and encountered U.S. West phone lines, which were not shown on the drawings furnished by the county. Mike Neville, the project superintendent for MMJ, testified that he understood that the county had already conferred with all utilities, including U S West, about the location of any underground lines and equipment. His understanding was based both on the contract documents and on standard construction *171 produre.[1] As it turned out, the county had not consulted with U S West so the design changes incorporated in change order number 3 were inaccurate. When Neville discussed the problem with U S West, it "[was] upset over the county releasing the drawings for construction without [U S West's] signature." Clerk's Papers (CP) at 723.
The county verbally instructed MMJ to stop work until the county could redesign the project. This prevented MMJ from starting work on other streets during the approximately six weeks it took to complete its redesign. When MMJ sought to do work on other streets so as to keep on schedule, the county forced MMJ to quit.
On August 7, 1998, the redesign was complete and the county told MMJ to go back to work. However, a week later, on August 14, it was discovered that the county's design grades were erroneous. The county required MMJ to shut down again while the county corrected the problem.
On August 25, 1998, MMJ submitted a request for $98,000 and a time extension of 50 days. The claim identified each delaying event by date, line location, description of event, crew affected, time impact, hourly rate, and total cost impact. MMJ received final, corrected grades for Seventh Avenue in mid-September.
During this time, county inspectors met daily with MMJ's superintendent, Neville. Neville met periodically, if not daily, with the county's construction field engineer. Neville met weekly with the county's construction manager/contract administrator. There were ongoing discussions regarding the time and cost associated with the change order, and MMJ sent numerous letters to the county concerning the delays and associated costs.
Despite the design delays, the county refused to extend the deadlines for completion. The county sent formal notice threatening to terminate the contract on September 10, 1998 because the project was behind schedule.
The work was completed in October. MMJ submitted another claim on December 22, 1998, which included the earlier claims as well as new ones. The county refused to consider any of the claims.
MMJ filed suit seeking compensation for the additional time and work on the projects associated with Seventh Avenue. The county filed for summary judgment, seeking dismissal of MMJ's claims on four grounds: (1) the contract placed all risks of unknown utilities on MMJ; (2) there was no evidence that the county breached the terms of contract; (3) MMJ should be estopped from asserting its claim for unbalanced work; and (4) MMJ's claims were barred by its failure to follow claims procedures.
In response, MMJ filed a cross motion for partial summary judgment. The trial court granted the county's motion and denied MMJ's motion. The trial court found that "[MMJ] did not comply with the protest and claims procedures of the contract for recovering additional compensation" and dismissed with prejudice MMJ's claims for additional compensation. CP at 770. The trial court did not make any findings on the issues in MMJ's cross-motion, including the issues of actual notice, prejudice, equity, substantial compliance, and reservation of rights.[2]
MMJ appealed and Division Three of the Court of Appeals reversed. Mike M. Johnson, Inc. v. County of Spokane, 111 Wash.App. 1051 (2002). The Court of Appeals found genuine issues of fact regarding whether the county had actual notice of a claim for additional compensation under a public works construction contract and whether the county waived compliance with contractual claims procedures.
The county appealed and we accepted review. Mike M. Johnson, Inc., v. County of *172 Spokane, 148 Wash.2d 1009, 62 P.3d 890 (2003). The county requests that we reverse the Court of Appeals and affirm the trial court's dismissal of MMJ's claims. MMJ requests that we affirm the Court of Appeals, or in the alternative, send the case back to the trial court for findings of fact and conclusions of law on the unaddressed issues in MMJ's cross-motion for summary judgment.

ANAYLSIS
In reviewing an order of summary judgment, the appellate court engages is the same inquiry as the trial court. Bowles v. Dep't of Ret. Sys., 121 Wash.2d 52, 62, 847 P.2d 440 (1993). Summary judgment may be granted only if the record demonstrates that there is no genuine issue as to any material fact, and that reasonable persons could reach but one conclusion. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982); CR 56(c). In reviewing the record, the court considers the facts in the light most favorable to the nonmoving party. Bowles, 121 Wash.2d at 62, 847 P.2d 440.
The county concedes it had actual notice of the additional time and work encountered by MMJ as a result of the county's redesign of Seventh Avenue. However, the county argues that MMJ failed to follow the proper claims procedures and that this is fatal to MMJ's request for compensation, because under the contract the contractor waives his right to compensation if he fails to comply with claims procedures. The county argues that the notices MMJ did submit were not sufficiently detailed or timely to comply with the contract, and asserts it did not waive compliance with the claims procedures. The county also argues as a matter of law that there is no actual notice exception to strict compliance with a contract's claims provisions. There are genuine issues of fact regarding whether MMJ's notices were sufficient to constitute compliance with the contract's claims provisions under the circumstances.
MMJ was required under the contract to give immediate written protest if it had any objection to the proposed change order, and then to supplement the written protest within 15 days with more detailed information regarding the nature of the objection, additional costs, and additional time. First, the county argues that MMJ's notice was not timely. Apparently the county believes the written protest was due within 15 days of June 4, 1998, the date of the first change order. However, MMJ had no objection to the first change order number three. It was only when the county's designs proved to be inaccurate that problems arose. The redesign was initially completed August 7, but additional problems were found, so it was not until August 14 that MMJ was allowed to go back to work. The county never satisfactorily explains why the August 25 claim did not suffice as written protest within 15 days. At a minimum, there is an issue of fact whether MMJ's notice was timely and thus substantially complied with the contract's claim requirements.
Second, the county also points out the MMJ failed to give written notice of a request for extension of time. However, it was the county that ordered and was in control of the extension of time. Cf. Bignold v. King County, 65 Wash.2d 817, 823-24, 399 P.2d 611 (1965) (rejecting the argument that the contractor had a duty to comply with the strict terms of the contract despite effectively contrary direction from the county engineer and imposing "resolute good faith" on the county to abide by the direction of its agents). The evidence presented by MMJ was that the county told it to halt work until the county could redesign the project. It is a question of fact whether the county ordered a work stoppage. If the county sought the extension, then MMJ would not have had a duty to give written notice of it.
Third, the county argues that the letters and claims for additional compensation submitted by MMJ were not sufficiently detailed to comply with the claims procedures. Again, it is a factual issue whether, under the circumstances, MMJ's notices complied. MMJ could not be expected to provide a detailed time and cost estimate when it did not even have a design to work with and did not know when one would be provided. The county forced MMJ to stop working and said, in essence, "We will tell you when we are done with the design and when you can *173 restart. In the meantime you must forecast how long the delay will be and submit documentation upon which we will rely in determining your compensation."
Based on the record before us, with all inferences in favor of the nonmoving party, it appears MMJ did comply with the contract. MMJ sent letters asking the county to produce the design as soon as possible and telling the county that its costs were mounting the longer it remained idle. Prior to receiving the final design, MMJ sent numerous letters to the county. For example, MMJ sent notices on June 16, 1998 (field notice from John Neville to Chad Coles); June 26, 1998 (letter to county outlining specific objections to change order number three); letters of July 7, 1998 and July 9, 1998 (concerning mounting costs due to work stoppage); letter of July 10, 1998 (requesting ability to proceed with work and avoid additional delays); and letters of July 24, July 29, August 6, August 14, August 18, from Ben Price, MMJ's contract administrator. The county's response was simply to reiterate it required compliance with the claim procedures.
MMJ presented evidence that the letters and notices it provided were standard in the industry. The "contract language is interpreted in light of industry practice." Barry B. Bramble & Michael T. Callahan, CONSTRUCTION DELAY CLAIMS § 2.01 (3d ed.2000). In these circumstances, there are genuine issues of fact whether the notices provided by MMJ satisfied the contract requirements in light of industry practice.

1. ACTUAL NOTICE PLUS
I concur with the majority that "actual notice" alone is not sufficient to comply (or waive compliance with) a contract. However, the issue is more complex than that. This is largely because the "concept of construction delay is universal to the industry." Bramble & Callahan, supra, § 1.01. The purpose of a prompt notification requirement of changed conditions involving possible delay and increased expense is to give the owner the opportunity to verify and investigate the differing site condition and to make the most cost-effective arrangements possible. James F. Nagle & Douglas S. Oles, WASHINGTON BUILDING CONTRACTS AND CONSTRUCTION LAW § 15.45 (1996); Sime Constr. Co. v. Wash. Pub. Power Supply Sys., 28 Wash.App. 10, 621 P.2d 1299 (1980) (owner was prejudiced by contractor's lack of written notice because it could have made more favorable, alternate arrangements). MMJ fulfilled that purpose in notifying the county immediately of utility problems.
MMJ was required by the contract to notify the county engineer of changed conditions in writing. The engineer was required by the contract to "make an equitable adjustment in the payment or the time required for the performance of the work." CP at 111. Now the county wants to renege on its agreement to equitably compensate MMJ for work it required merely because MMJ failed to comply with the technical requirements regarding the form of its request for additional compensation.
However, the rule in Washington has been that where the contractor notifies the owner of the changed condition, failure to precisely follow claims procedures will not defeat the contractor's right to compensation unless that procedural error causes prejudice to the owner. Bignold, 65 Wash.2d 817, 399 P.2d 611. In Bignold, the county's representative ordered the contractor to perform extra work because of an anticipated site condition, of which the owner had been promptly notified. The contractor sought compensation for the additional work caused by the unanticipated conditions. The county defended on the grounds that the contractor did not make a written claim according to the contract's requirements. The court held that the county was required to make an equitable adjustment to the contract price, holding:
the [owner] became immediately aware of the changed conditions as soon as they developed and ordered the contractor to perform the changes and extra work involved.... Under such conditions, the county cannot defeat recovery by a contractor even if no written notice was given. Bignold, 65 Wash.2d at 822, 399 P.2d 611.
The material facts in this case are substantially similar to Bignold, and the result *174 should be the same. The majority attempts to distinguish Bignold by pointing out that it was not just the actual notice in Bignold that caused the court to grant the contractor recovery despite lack of written notice. The majority points out that "it was the owner's knowledge of the changed conditions coupled with its subsequent direction to proceed with the extra work that evidenced its intent to waive enforcement of the written notice requirements under the contract." Majority at 167. But that is exactly what happened here. The county knew of the changed conditions, created the plans to deal with those conditions, and subsequently directed MMJ to proceed with the extra work.
Similarly, in Lindbrook Constr., Inc. v. Mukilteo Sch. Dist. No. 6, 76 Wash.2d 539, 458 P.2d 1 (1969), this court required the owner to pay for additional work even though the contractor did not strictly comply with the notice and claim requirements. The contractor encountered unexpected site conditions when performing grading and drainage work at the site of a new school, requiring extra work to complete the project. The architect, who was the school district's representative, had actual knowledge of the conditions as they surfaced. This court denied the county's attempt to avoid payment for the contractor's additional work on the basis of failure to comply with the contract's notice provision. This court found that the owner's actual notice was critical to the result, noting the architect was the one "who told the contractor what to do, and what not to do. It strains credulity to believe that he failed to keep the School District authorities advised of what was happening." Lindbrook, 76 Wash.2d at 543, 458 P.2d 1. The court concluded that the "contractor's right to recover under the circumstances of this case is clear." Lindbrook, 76 Wash.2d at 544, 458 P.2d 1 (citing Bignold, 65 Wash.2d 817, 399 P.2d 611); see also Am. Sheet Metal Works, Inc. v. Haynes, 67 Wash.2d 153, 407 P.2d 429 (1965) (owner cannot deny compensation to contractor for extra work authorized and directed by owner, despite contractor's failure to get written approval).
Accordingly, I agree that mere actual notice is not sufficient to comply with or waive the contractual notice requirements. However, an obligation to pay for work performed may be triggered by actual notice and direction by the owner or his agent to continue working.

2. WHETHER ABSHER REQUIRES A DIFFERENT RESULT
The county relies on Absher Constr. Co. v. Kent Sch. Dist. No. 415, 77 Wash.App. 137, 890 P.2d 1071 (1995), for the proposition that Washington now follows a rule of strict compliance in enforcing a construction contract's claims procedures and that unequivocal conduct is required before a contract provision will be deemed waived. This citation is not well taken. In Absher, the owner had no notice of the contractor's additional work until it was already completed. The owner had no opportunity to investigate the differing site conditions and make a determination how to accommodate it. In Absher, the contractor went ahead and completed the work and then presented the bill. In the present case, MMJ was completing work expressly required by the county and under the county's daily inspection. We should not extend Absher for the proposition that an owner can direct additional work be done and then avoid paying for it if the contractor fails to submit a claim in 15 days which includes details which could not possibly yet be known.
The county contends that under Absher, it is no longer relevant whether the owner has actual notice of the changed conditions and the additional work made necessary by those conditions. The county points out that the Court of Appeals in Absher wrote that "[e]ven if the District had known of the concerns, those concerns were not claims under the contract." Id. at 143, 890 P.2d 1071. Based on this language, the county contends that actual notice of changed site conditions no longer has any relevance in evaluating the contractor's entitlement to compensation.
However, the statement in Absher regarding what the result in that case would have been if actual notice had occurred is plainly dicta. Actual notice did not occur, and therefore the parties were not meaningfully adversed on this point. The contractor did not *175 provide any notice to the owner, and the owner did not have the opportunity to investigate alternate arrangements and was not able to direct the contractor how to proceed. The county cannot rely on dicta from a case where actual notice was not an issue. Nor can the county effectively argue that Absher changed the rules in Washington regarding actual notice. Notably, the Absher decision did not meaningfully evaluate governing Washington precedent on that issue, such as Bignold and Lindbrook.

3. PREJUDICE
Nor did Absher change the rule in Washington regarding the relevance of prejudice to the owner if a contractor fails to provide proper written notice. The general rule is that a contractor does not forfeit his claim to equitable adjustment merely because he has failed to technically comply with a contract's notice provisions; the owner must also show that he has actually suffered prejudice. Kenneth M. Cushman & Joyce K. Hackenbrach, Advanced Construction Claims Workshop: The Law, Analysis, and Pricing of Delays and Disruptions, in REAL ESTATE LAW AND PRACTICE * *44-45 (PLI Real Estate Law & Practice Course Handbook Series, Oct. 18-19, 1990), available in Westlaw 357 PLI/Real 11; Jon M. Wickwire et al., CONSTRUCTION SCHEDULING: PREPARATION, LIABILITY, AND CLAIMS § 3.14(d) (2d ed.2003).
Traditionally, Washington courts have followed the general rule and held that lack of written notice "can be overcome by a showing that the owner had actual or constructive knowledge or suffered no prejudice." Nagle & Oles, supra, § 14.5. Absher did not change Washington's adherence to the general rule. The Absher court stated that prejudice is not required to enforce contractual notice provisions. Absher, 77 Wash.App. at 144, 890 P.2d 1071. The court then cited Sime, a case in which prejudice to the owner was an important factor of the case. Sime expressly stated that prejudice to the owner would have been avoided if notice had been given. Sime, 28 Wash.App. at 16, 621 P.2d 1299. Thus, after Absher, the rule remains that prejudice to the owner is relevant in determining the enforceability of notice provisions.

4. WAIVER
In addressing the waiver issue, the majority relies on the county's written correspondence informing MMJ that it was not waiving the requirements of written notice and claim submission. However, the county's actions indicated otherwise. Again, there was ample evidence presented by MMJ upon which a reasonable juror could find waiver.
The majority quotes Swenson v. Lowe, 5 Wash.App. 186, 486 P.2d 1120 (1971), stating "`the requirement of a writing is for the benefit of the owner, and the owner, either expressly or by conduct, may waive such a requirement.'" Majority at 167 (quoting Swenson, 5 Wash.App. at 188, 486 P.2d 1120). The majority fails to include the very next sentence in the quoted opinion, which is:
As stated in Annot., 2 A.L.R.3d 620, 661 (1965), "where ... the work was orally ordered, requested, directed, authorized, or consented to by the owner ..." the requirement is deemed waived. Morango v. Phillips, 33 Wash.2d 351, 205 P.2d 892 (1949); Eggers v. Luster, supra [32 Wash.2d 86, 200 P.2d 520 (1948)]; Bjerkeseth v. Lysnes, 173 Wash. 229, 22 P.2d 660 (1933); Crowley v. United States Fid. & Guar. Co., 29 Wash. 268, 69 P. 784 (1902). See 13 Am.Jur.2d Building and Construction Contracts § 24 (1964).
Swenson, 5 Wash.App. at 188-89, 486 P.2d 1120.
Our cases are in accord. Where the owner directs the contractor to do the work, the owner cannot then complain the contractor did not seek written authorization. The county cannot prevent waiver from occurring simply by disclaiming waiver in its letters while at the same time engaging in conduct which constitutes waiver under the law. Under our construction law, at the very least, when the county says one thing and then does another, it creates a question of fact. As in Swenson, the county may not direct that work be done and then refuse to compensate MMJ just because the original contract required that a demand for compensation be in a technical, detailed writing.
*176 The county's reliance on Absher regarding waiver is again misplaced. The Absher court found there was no conduct on the part of the owner that could be interpreted as a waiver of the requirement of notice or a waiver of the requirements regarding claims procedure for additional compensation. However, in the present case, there is ample evidence that the county was intending to waive the requirements of written claim procedures. The county orally ordered MMJ to halt work twice, both times without providing notice to MMJ of when it could return to work and it orally told MMJ when to return to work. Under these facts, a reasonable juror could find that the requirement of written notice was waived.

5. RISK OF MISLOCATED UTILITIES
The county argues that MMJ assumed all risk of delay and other potential problems due to utilities at the site. MMJ claims the county breached its implied warranty to furnish the contractor with accurate plans, and the delay was thus owner-caused.
As "[b]etween the owner and the contractor, the owner is responsible for the design and any losses due to defects in design. This responsibility is often stated in terms of the owner's implied warranty of the adequacy of the plans and specifications." Bramble & Callahan, supra, § 3.02(D). There is evidence submitted by MMJ that plans associated with change order number three were inaccurate. According to its standard practice, prior to soliciting bids from contractors, the county requested input from all utility companies regarding the presence of equipment within the boundaries of the Apple Valley and Wolfland projects. MMJ provided evidence through the affidavit of an expert witness in construction management that the standard in the trade is that the owner is responsible for confirming the location of utilities. However, the county failed to solicit input from utility companies after it expanded the scope of the project. The change order was presented to MMJ on June 4, 1998 and MMJ was required to start work immediately, prior to approval by the utility director. The drawings the county provided to MMJ indicating utility line placement were in error.
MMJ contends, and the evidence suggests, that the error was the result of the county failing to follow its standard procedures and failing to fulfill its duty to provide adequate plans. MMJ was entitled to rely on the standard practice of the county to involve utilities in the design process. This is an unresolved factual issue that is material to the outcome of the case. The county says it disclaimed the implied warranty in its contract document. Standard specification 1-07.17 allocates to the contractor all costs associated with relocation of utilities. Therefore, according to the county, MMJ's reliance on the contract plans and specifications was unreasonable. Whether the reliance was reasonable is a question of fact, making summary judgment inappropriate in this case.
This is not a novel question of law. For example, in Clevco, Inc. v. Mun. of Metro. Seattle, 59 Wash.App. 536, 799 P.2d 1183 (1990), Clevco won a bid to install sewers in east King County. The contracts purported to allocate all risk of underground utilities to Clevco, the contractor. Like the case at bar, Metro failed to indicate utilities on its plans and Clevco submitted a bill for additional compensation. Metro moved for summary judgment, arguing the contract clearly placed the risk of utilities on the contractor. The appellate court disagreed stating the general rule is that the contractor's recovery "is determined by the question of whether the contractor's reliance on contractual representations was reasonable." Id. at 543, 799 P.2d 1183 (emphasis added). Where the plans or specifications lead a public contractor reasonably to believe that conditions represented on the plans do exist and may be relied upon, he is entitled to compensation for extra expense incurred as a result of the inaccuracy of those representations. Id. at 542, 799 P.2d 1183 (citing Dravo Corp. v. Mun. of Metro. Seattle, 79 Wash.2d 214, 484 P.2d 399 (1971)); see also Scoccolo Constr., Inc. v. City of Renton, 102 Wash.App. 611, 9 P.3d 886 (2000) (contract language stating contractor bears risk of delays due to utilities does not necessarily preclude contractor's recovery but what parties intended contract language to mean is a factual issue which prevents summary judgment).

*177 CONCLUSION
I agree with the majority that actual notice is not an exception to contract compliance. But that is not the issue here. Instead, the question is whether actual notice plus direction to proceed with the work may substantially comply with a contract or waive technical portions of the claims procedure. This is a factual question ill suited for summary judgment resolution.
The county warns that if we hold there is a factual dispute regarding compliance with the contract's notice and claim provisions, or a factual dispute regarding waiver, contractors will be free to run up costs and incur delays wherever they like, and then present a surprise bill to the owner at the end of the project. This is simply untrue. The general rule is, and our cases state, that when the owner directs the contractor to do work outside the contract, and then observes the work being done, the owner cannot later rely solely on technical claim provisions requiring a writing to deny equitable and reasonable compensation to the contractor, especially where the lack of a writing has not caused the owner any prejudice. The trier of fact should be the one to decide whether that is what happened here.[3]
We are not deciding whether there were reasonable grounds for upholding a jury's decision. Certainly, the majority has found many potentially compelling facts from which a rational jury might find for the county. A conflict of material fact exists. I would affirm the Court of Appeals and remand the case for trial.
JOHNSON, IRELAND, and SANDERS, JJ., concur.
NOTES
[1] The County increased the compensation to $75,467 in September (1998).
[2] Section 1-07.17 of the contracts provides:

The existence and location of all utilities are shown on the plans based upon information available to Owner at the time of design. It is to be expected that the actual location of utilities will at times vary, sometimes substantially, from the locations indicated on the plans.
ALL RISKS OF UTILITIES MISLOCATED ON THE PLANS, OR OF UTILITY CONFLICTS NOT SHOWN ON THE PLANS SHALL BE CONTRACTOR'S. If the Engineer determines that the project requires work to relocate or provide other adjustments to utilities that are either mislocated on the plans or that entail utility conflicts, the work (labor and equipment) shall be performed by Contractor at no additional cost to Owner. Any net additional costs for materials . . will be reimbursed by Owner. Contract time may be extended as provided in Section 1-08.8, Extension of Time.
Ex. B, Clerk's Papers (CP) at 46.
[3] See supra note 2.
[4] The standard of review on summary judgment is well settled. Trimble v. Wash. State Univ., 140 Wash.2d 88, 93, 993 P.2d 259 (2000). The appellate court engages in the same inquiries as the trial court, determining whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. Id. The court considers all facts and reasonable inferences from them in the light most favorable to the nonmoving party, and "`[t]he motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion.'" Id. (quoting Clements v. Travelers Indem. Co., 121 Wash.2d 243, 249, 850 P.2d 1298 (1993)). Bare assertions that a genuine material issue exists, however, will not defeat a summary judgment motion in the absences of actual evidence. Id.
[1] Also, MMJ had prior experience with Spokane County. MMJ had performed, without incident, one other contract for the county earlier in the year.
[2] The trial court certified some issues for review and stayed others pending appellate review. The trial court stayed MMJ's claim for unpaid contract balances on both projects, the county's counterclaims for liquidated damages and other back charges, as well as the county's third party claims against U S West.
[3] One of the issues raised by MMJ in its summary judgment motion, which the trial court did not address, is whether the contract's provision regarding complete forfeiture of the contractor's claim violates RCW 4.24.360. The statute nullified "`no-damages-for-delay'" clauses. Scoccolo, 102 Wash.App. at 616, 9 P.3d 886. Under the statute, any contract language, which purports to extinguish a party's right to an equitable adjustment for unreasonable delay, is void as against public policy. MMJ contends the county's delays were unreasonable.

The trial court also failed to address MMJ's claim that its reservation of rights in the executed change order effectively preserved its claims, although there is authority for that position. Thomas H. Asselin & M. Catherine Harris, How to Recognize, Preserve, Present, and Prosecute Construction Contractors' Delay Claims, 40 S.C. L. REV. 943, 950 (1989).