[No. 33489-1-I.    Division One.    January 23, 1995.]

ABSHER CONSTRUCTION CO., ET AL, *Appellants*, v. KENT SCHOOL DISTRICT NO. 415, *Respondent*.

138

*Samuel Baker, Todd Nelson, Arthur McGarry,* and *Oles Morrison & Rinker,* for appellants.

*Richard Prentke, Vickie Williams,* and *Perkins Coie,* for respondent.

WEBSTER, J. — Absher Construction Co., Chapman Mechanical, Inc., and Emerald Aire, Inc., appeal a summary judgment and the award of attorneys' fees in a breach of contract case. They claim genuine issues of fact were in dispute. We affirm.

## FACTS

Kent School District 415 awarded Absher a contract to build Daniel Elementary School, August 8, 1991. Absher subcontracted with Chapman for the mechanical work, and Chapman subcontracted with Emerald for the air conditioning system (HVAC). Lee Architectural Group and BJSS Group (Lee) contracted with the District to perform the architecture work and subcontracted with Hargis Engineers for the HVAC/mechanical design.

The Absher contract contained alternative dispute resolution procedures. During contract negotiation, Absher acknowledged that these provisions were mandatory. Absher was required to give the District prompt and detailed written notice of any claims 14 days after events giving rise to claims, enter into structured dispute resolution procedures, and mediate any remaining disputes before any lawsuit could be commenced. This requirement could not be waived except by an

explicit written waiver signed by the owner. Failure to provide complete written notification was an absolute waiver of any claims arising from or caused by delay.[1] Acceptance of final payment would also constitute a waiver of all unidentified claims.[2]

Construction began in August 1991. Emerald completed installation of the HVAC system in September 1992. A number of claims arose during construction. Absher submitted 102 claims and the District paid 70 of those claims. Six claims were credits back to the District, and the remaining 26 claims were canceled. Three of the submitted claims involved Emerald's work, and were paid through Absher. Absher invoked the dispute resolution procedure on other claims seven times, and all resulted in settlements and agreed contract change orders.

The District approved "substantial completion" on the building and site improvements during August/September 1992 and final acceptance on March 10, 1993. The District forwarded final payment to Absher on March 10, 1993. As a condition of "final acceptance", Absher certified on February 19, 1993, that it had paid in full all known claims for which the District might in any way be held responsible. Two days prior to making its affidavit, Absher received a February 12, 1993, letter from Emerald to Chapman indicating that Emerald anticipated making a claim/request for equitable adjustment for $150,000 to $200,000 within the next week, and that it anticipated filing a claim against the public works bond and retainage.[3]

---

[1]Supplemental Condition 3.10.6 provided in part that "FAILURE TO PROVIDE A COMPLETE, WRITTEN NOTIFICATION SHALL BE AN ABSOLUTE WAIVER OF ANY CLAIMS ARISING IN ANY WAY FROM OR CAUSED BY SUCH DELAY."

[2]General Condition 9.10.4 provided in part that: "Acceptance of final payment by the Contractor, a Subcontractor or material supplier shall constitute a waiver of claims by that payee except those previously made in writing and identified by that payee as unsettled at the time of final Application for Payment. Such waivers shall be in addition to the waiver described in Subparagraph 4.3.5."

"General Condition 4.3.5: "**Waiver of Claims: Final Payment.** The making of final payment shall constitute a waiver of Claims by the Owner"".

[3]Retainage is 5 percent of each progress payment paid to an escrow account and released to the contractor after completion of the work. RCW 60.28.011.

The District received from Absher a copy of the Emerald letter February 23, 1993. In its transmittal, Absher stated that it "was not notified of this claim prior to this letter". Absher did not modify its affidavit that all known claims had been paid. On April 7, 1993, Emerald filed a lien against the statutory retainage and payment bond.

Absher filed suit May 10, 1993, 2 months after final acceptance. Two days later the District received Emerald's request for an "equitable adjustment", seeking more than $200,000 on its original contract price of $286,978. Emerald claimed the District breached its contract with Absher by providing overwhelmingly defective plans.

## I

██ Absher claims there were material issues of fact in dispute regarding notice, agency, waiver, prejudice, futility, the amount of the claim, and responsibility for nonoccurrence of dispute resolution. The Washington Supreme Court recently reiterated the rules governing review of summary judgment.

> A motion for summary judgment may be granted only if, "after viewing all the pleadings, affidavits, depositions, admissions and all reasonable inferences drawn therefrom in favor of the nonmoving party", the trial court finds, "(1) there is no genuine issue as to any material fact, (2) that all reasonable persons could reach only one conclusion, and (3) that the moving party is entitled to judgment as a matter of law".

*Higgins v. Stafford*, 123 Wn.2d 160, 168-69, 866 P.2d 31 (1994).

The District contends that summary judgment was proper because even taking all of the facts as true, Absher explicitly waived the claims asserted pursuant to numerous provisions of the contract. *Voorde Poorte v. Evans*, 66 Wn. App. 358, 362, 832 P.2d 105 (1992). Interpretation of an unambiguous contract is a question of law. Thus, "[i]f a contract is unambiguous, summary judgment is proper even if the parties dispute the legal effect of a certain provision." *Voorde Poorte*, 66 Wn. App. at 362. Mere unsupported conclusory allegations and argumentative assertions will not defeat summary

judgment. *Vacova Co. v. Farrell*, 62 Wn. App. 386, 395, 814 P.2d 255 (1991). Although the issues framed by Absher are denoted factual disputes, they are actually conclusions of law as to the legal effect of the undisputed facts. We review the facts to determine whether the District was entitled to summary judgment as a matter of law.

## Notice

■ Washington law requires contractors to follow contractual notice procedures, unless those procedures are waived. *Sime Constr. Co. v. WPPSS*, 28 Wn. App. 10, 15, 621 P.2d 1299 (1980), *review denied*, 95 Wn.2d 1012 (1981); *Lindbrook Constr., Inc. v. Mukilteo Sch. Dist. 6*, 76 Wn.2d 539, 540-43, 458 P.2d 1 (1969). Absher admits that it was not notified and did not provide written notice of Emerald's claim until months after Emerald had completed all of its work. Thus, Absher did not submit Emerald's claims in writing within 14 days of the events giving rise to the claim, as required by the contract.[4]

Absher contends that attendance of District and subconsultant engineers at project meetings where HVAC design problems were discussed constituted notice. Alternatively, it asserts that addressing problems and comments to, and receiving guidance from subconsultant Regan Corwin, of Hargis Engineers, constituted a waiver of the notice provision by the District.[5]

---

[4]Contract provision Supplemental Condition (SC) 3.10.6 requires the contractor to notify the owner and architect within 7 days of any proposed changes in the schedule. SC 4.3.7 states that "[a]ll claims for additional cost must be made according to Paragraph 4.4, or they will be waived". SC 4.4.2 states that "[t]he Contractor shall give written notice to the Owner and the Architect of all claims within fourteen days of the event giving rise to them". SC 4.5.1 states that "[a]ny claim . . . for damages, additional payment for any reason, or extension of time, whether under the Contract or otherwise, shall be conclusively deemed to have been waived by the Contractor unless a timely written claim therefor is made pursuant to and in strict accordance with the applicable provisions of the Contract; or, if (and only if) no such provision is applicable, unless such claim is set forth in detail in writing and received by the Owner within 7 calendar days after the facts".

[5]There is no merit to Absher's contention that an engineering study, performed 1 year before the contract award, made Hargis the District's agent for

Under the contract, claims must include the amount of the claim and the length of delay sought. Careful review of the record reveals no claim was made. Emerald uses a "Field Request and Information" form for its design questions. Emerald's submissions of this form did not seek specific costs: the space for "Cost Implication" was always blank, except on a few forms where "to be determined" was filled in. These forms, comments, concerns and objections related by Chapman to subconsultant Hargis and the District's field personnel during project meetings were not sufficient to meet the contract written notice requirements. Moreover, meeting notes indicate that Emerald did not attend a single field progress meeting. The forms were addressed to Chapman and copies were occasionally sent *to* Hargis; they were not sent to the District.[6] Thus, the District had no actual knowledge of Emerald's concerns. Even if the District had known of the concerns, those concerns were not claims under the contract.

Here, the District made no written waiver to the contract notice requirement. Where the contract is silent, an architect and its subconsultants are not a general agent of his or her employer and have no implied authority to make a new contract or alter an existing one for the employer. *Valley Constr. Co. v. Lake Hills Sewer Dist.*, 67 Wn.2d 910, 918, 410 P.2d 796 (1965). Thus, any waiver to the notice requirement would have been by conduct. Waiver by conduct requires unequivocal acts of conduct evidencing an intent to waive. *Birkeland v. Corbett*, 51 Wn.2d 554, 565, 320 P.2d 635 (1958). Actual authority derives from the principal's objective manifestations of authority to the agent. *Smith v. Hansen, Hansen & Johnson, Inc.*, 63 Wn. App. 355, 363, 818 P.2d 1127 (1991), *review denied*, 118 Wn.2d 1023 (1992). Actual authority can

purposes of this contract. The document named Hargis as part of its design team and did not appoint any agent.

[6]Two letters from Emerald to Chapman document additional costs: February 10, 1992 ($1,647.62); August 20, 1992 ($4,216.56). However, there is no indication that these letters were ever forwarded as a claim to Absher and in turn to the District.

be express or implied, but it is the parties themselves, not the impressions of others, that determine the existence of actual authority. *Smith*, at 363. Absher cites no specific conduct by the District evidencing an intent to waive contract provisions explicitly denying the authority of the architect and its subconsultant to act as its agent.[7] Hargis was not the District's agent and could not waive the notice requirement. Absher's contract explicitly deleted from the American Institute of Architects standard form contract the phrase that the architect "will be the Owner's representative".[8] Thus, Absher's contract lacked authority for the architect or its subconsultant, Hargis, to act as the District's agent. Hargis's contract was not with the District. Absher's contract made it clear that any waiver of notice had to be in writing. In addition, the contract with the architect expressly provided that notice by third parties to the architect shall not be deemed notice to the District. Since the District did not waive the notice requirement, or designate Hargis as its agent, Absher was required to comply with the contract notice requirements.

---

[7]Cases cited by Absher are distinguishable. *Lindbrook Constr., Inc. v. Mukilteo Sch. Dist. 6*, 76 Wn.2d 539, 542-43, 458 P.2d 1 (1969) (architect designated by contract to receive written notice was the owner's authorized agent and waived the written notice requirement by directing extra work); *American Sheet Metal Works, Inc. v. Hayes*, 67 Wn.2d 153, 159, 407 P.2d 429 (1967) (the contractor authorized, permitted, and directed its subcontractor to perform additional work); *Swenson v. Lowe*, 5 Wn. App. 186, 188, 486 P.2d 1120 (1971) (contract provision requiring a written change order was waived because when performance matters were explained to the owner, he acquiesced, made payments on billings without objection, and on certain occasions indicated approval of the additional work).

[8]General Conditions paragraph 4.4.1 of Absher's contract authorizes the architect to act as the owner's agent only to the extent authorized elsewhere in the contract. Supplemental Conditions paragraph 7.3.4, authorizes the architect to determine the reasonable value of a change ordered by the owner through a formal contract change. It does not authorize approval of changes or claims. Paragraph 2.6.16 of the architect's contract authorizes the architect to interpret and decide matters under the requirements of the contract. He is to interpret what the contract says, not make changes to contract requirements. This does not give the architect authority to receive or waive notice.

## Prejudice

Absher contends the notice provisions were waived because the District suffered no prejudice. However, Washington does not require an element of prejudice to enforce contractual notice provisions. *Sime Constr.*, 28 Wn. App. at 16.

## Dispute Resolution

Absher next argues that the provisions of the contract which require it to give notice of claims and enter into the dispute resolution process are void pursuant to RCW 4.24.360. It argues that the statute makes unenforceable any contract provision waiving a contractor's right to recover damages for delay. The District's contract does not "waive, release, or extinguish" any rights to delay damages. Similar provisions did not violate RCW 4.24.360 in *Hensel Phelps Constr. Co. v. King Cy.*, 57 Wn. App. 170, 179 n.6, 787 P.2d 58 (1990).

While admitting it failed to follow the dispute resolution process it had followed for seven other claims, Absher attempts to excuse its failure by asserting (1) the District failed to initiate the dispute resolution procedure; (2) it would have been "futile" for it to actually bring a claim because a subconsultant's field employee allegedly told another subconsultant's field employee (Emerald's) that its claims would be denied; and (3) the dispute resolution procedure was not Absher's sole remedy.

This contract contained a multitiered dispute resolution procedure precisely because a field employee at the first level might say "no" to a contractor's request for payment. If the field people could not agree at Level I, Absher could appeal the dispute to management at Level II; if management could not resolve the dispute, Absher could then appeal to the executives at Level III; if the executives did not resolve the dispute, Absher could then take the dispute to mediation. Thus, there is no merit to Absher's assertion that to invoke the dispute resolution process was "futile".

Moreover, the District in fact paid Absher for claims Emerald properly submitted under the dispute resolution procedure for "heavily congested" HVAC duct work.

■ ■ Absher asserts that deficiencies in the plans entitled it to off-contract remedies.[9] In Washington there is a strong public policy favoring alternate dispute resolution. *Lake Wash. Sch. Dist. 414 v. Mobile Modules N.W., Inc.*, 28 Wn. App. 59, 64, 621 P.2d 791 (1980). Where an agreement provides for a method of resolving disputes between the parties, that method must be pursued before either party can resort to the courts for relief. *Brady Contracting Co. v. West Manchester Township Sewer Auth.*, 97 Pa. Commw. 31, 40, 508 A.2d 1287, 1292 (1986), *appeal denied*, 514 Pa. 649, 524 A.2d 495 (1987), *cited with approval in Clevco, Inc. v. Municipality of Metro. Seattle*, 59 Wn. App. 536, 542, 799 P.2d 1183 (1990), *review denied*, 117 Wn.2d 1006 (1991). This contract provided a procedure to resolve claims for extra work caused by deficient plans and specifications. The dispute resolution procedures in the contract are clearly mandatory, and Absher waived the Emerald claim by failing to follow those procedures.

### Absher's Explicit Waiver

■ Further, in order to receive final payment Absher had to provide a nonclaim affidavit. On February 17, 1993, Absher certified that the District:

> *has paid in full or has otherwise satisfied all obligations* for all materials and equipment furnished, for all work, labor, and services performed, and *for all known indebtedness and claims against the Contractor* for damages arising in any manner in connection with the performance of the Contract referenced above *for which the Owner or his property might in any way be held responsible.*

(Italics ours.) Absher took no exceptions and stated: "To the best of my knowledge all except retainages." Washington

---

[9]Absher cites two cases applying Ohio law which allows a fraud-in-the-inducement claim outside the contract. *See Pitt Constr. Co. v. Alliance*, 12 F.2d 28, 31 (6th Cir. 1926); *Condon-Cunningham, Inc. v. Day*, 22 Ohio Misc. 71, 258 N.E.2d 264 (1969). Here, there is no allegation of fraud-in-the-inducement.

courts have held similar releases valid and enforceable. *Yakima Asphalt Paving Co. v. Department of Transp.*, 45 Wn. App. 663, 666-67, 726 P.2d 1021 (1986), *review denied*, 107 Wn.2d 1029 (1987).

On February 17, 2 days before it sent the affidavit, Absher received a copy of the Emerald-Chapman letter in which Emerald threatened to file a request for equitable adjustment "estimated to between $150,000 and $200,000" within the next week.[10] The District accepted Daniel Elementary School on March 10, 1993, and arranged for final payment to Absher on the same date.[11] Absher explicitly waived the Emerald claim by failing to identify the claim in its affidavit and by accepting final payment.

## Limitation Period

Absher's claim is also precluded by the contractual claim limitation period. Supplemental Conditions required Absher to bring suit within 120 days after the date of substantial completion (August/September 1992). SC 4.4.2.6. This requirement cannot be waived except through an explicit written waiver signed by the District. Prompt notice of litigation is needed for many reasons, not the least of which are the 60-day statutory lien period after final acceptance and the need to accept formally a project with no unknown claims. Absher did not bring suit until 230 days after substantial completion. Absher again waived any right it had to payment. *Yakima Asphalt*, 45 Wn. App. at 664. "Parties to a contract can agree to a shorter limitations period than that called for in a general statute." *Yakima Asphalt*, at 665;

---

[10]The Emerald-Chapman letter did not contain any substance or detail and was merely a threat. The general contract required that notice of a claim must contain specific information regarding the amount requested, as well as all direct and indirect impacts. SC 4.4. Moreover, Absher later accepted final payment without ever advancing Emerald's purported "claim" into the required dispute resolution process.

[11]Absher argued below that its affidavit was "subject to" the Emerald-Chapman letter. Absher's argument that the "affidavit merely constitutes a conditional release against the Owner's *property*" misreads the text of the affidavit. There was no condition; the affidavit applied to the Emerald claim.

*Seattle v. Kuney*, 50 Wn.2d 299, 311 P.2d 420 (1957). The District was entitled to summary judgment.

## II

Absher claims the court erred in awarding attorneys' fees under RCW 39.04.240, alleging the statute does not apply. It argues that its claim exceeded the limit of the statute and the statute does not apply retroactively. RCW 39.04.240 applies the provisions of the attorneys' fees statute, RCW 4.84.250-.280, to public works contracts "except that: (a) The maximum amount of the *pleading* shall be two hundred fifty thousand dollars". (Italics ours.) RCW 39.04.240(1). An award of attorneys' fees to the prevailing party is mandatory. RCW 4.84.250. A defendant is the prevailing party where the plaintiff either recovers nothing or recovers less than the amount for which the defendant offered to settle. RCW 4.84.270.

Absher contends that the sum of the separate damages sought by three parties, plus sales tax, exceeded $250,000, and the statute should therefore not apply. RCW 39.04.240(1) applies to actions in which the pleading for damages is $250,000 or less. Absher's amended complaint pleaded damages of at least $204,417.

Absher also asserts that the statute applies only to contracts executed after June 11, 1992. However, the plain language of the statute merely says that the parties cannot contractually waive the statutory attorneys' fee right in contracts executed after June 11, 1992. The Legislature did not say that the provisions apply to public works contracts executed after a particular day, but rather it stated they apply to "*an action* arising out of a public works contract". (Italics ours.) RCW 39.04.240(1). That is exactly the situation here. The statute became effective in 1992. This lawsuit was filed in May 1993. "[S]tatutory attorney's fee provisions in effect at the *termination* of the action are controlling". *Mackey v. American Fashion Inst. Corp.*, 60 Wn. App. 426, 430, 804 P.2d 642 (1991). The District was the prevailing party under RCW 39.04.240 and RCW 4.84.250 *et seq.* and is entitled to its attorneys' fees.

We affirm and award attorneys' fees on appeal pursuant to RAP 18.1 and RCW 39.04.240 and RCW 4.84.250.

COLEMAN and KENNEDY, JJ., concur.