174 P.3d 54 (2007)
AMERICAN SAFETY CASUALTY INSURANCE COMPANY, a foreign corporation, Respondent,
v.
CITY OF OLYMPIA, Petitioner.
No. 79001-9.
Supreme Court of Washington, En Banc.
December 27, 2007.
*55 BRIDGE, J.
¶ 1 This case arises from a contract dispute between American Safety Casualty Insurance Company (American Safety)[1] and the city of Olympia (City) and the trial court's award of summary judgment in favor of the City.[2] There is no dispute that American Safety did not follow the contract's provisions when it sought additional compensation for work it had performed and that it filed suit after the 180-day time limit established in the contract. However, American Safety argues that the City implicitly waived its right to demand compliance with the contract's provisions when it agreed to negotiate and try to reach a settlement. American Safety argues that the trial court erred in granting summary judgment to the City, and that the Court of Appeals was correct to reverse because an issue of material fact existed as to whether the City waived its contractual defenses. The City maintains that it expressly reserved its rights; that any waiver of rights must be unequivocal; and that, at most, its acts were equivocal and thus did not constitute a waiver. We agree with the City and reverse the Court of Appeals.

I

Facts and Procedural History
¶ 2 In 2000, the City awarded contractor Katspan, Inc. (Katspan) a contract to construct a segment of the LOTT southern connection pipeline project. Under the terms of the contract, the contractor was required to follow the contractual procedures if it wished to file a protest, formal claim, or lawsuit.[3] Katspan agreed that protests to any change orders or compensation issues were to be brought to the attention of the project engineer immediately. If Katspan disagreed with the project engineer's resolution of the protest, it could file an administrative claim. Any cause of action under the contract was to be brought within 180 days of the final acceptance and closeout of the project. Pursuant to the contract, failing to follow the *56 procedures constituted a waiver of the claims. Clerk's Papers (CP) at 47 ("By failing to follow the procedures of this section [Procedure and Protest by the Contractor] and Section 1-09.11 [Disputes and Claims], the Contractor completely waives any claims for protested work."); CP at 55 ("[T]he Contractor's failure to bring suit within the [180-day] time period provided, shall be a complete bar to any such claims or causes of action.").
¶ 3 From the beginning, the City was frustrated with Katspan's work  the City had to direct Katspan to fix deficient work, and Katspan failed to meet the scheduling requirements. On April 2, 2001, the City sent Katspan a letter stating that it considered Katspan to be in breach of the contract, as Katspan had not completed the work according to the time frame established in the contract. The City indicated that, pursuant to the contract, it was entitled to collect liquidated damages from Katspan for the breach. The City also stated that it "reserve[d] its right to demand strict compliance with all other terms of the contract documents, including . . . the required procedure for protest by the Contractor." CP at 338. On April 18, 2001, the City sent Katspan a letter in which the City stated that because Katspan failed to follow the procedures set forth in the contract, it had waived its claims. Katspan never disputed this letter.
¶ 4 When the work was finished, the City began the process of finally accepting the project as complete. On May 10, 2001, the project engineer, Parametrix Inc. (Parametrix), sent Katspan a letter asking Katspan to submit its final cost proposals in order to close out the project. Katspan did not respond. On May 25, 2001, Parametrix sent Katspan another letter, again asking for Katspan to provide the information by June 4 so it could begin the closeout. Katspan responded on June 11, 2001, saying that it was "in the final stages of compiling data" and that the requested information "should be ready shortly." CP at 95. Parametrix did not receive the information, so it reviewed the files and changes to the original contract and computed what it considered to be reasonable costs for the additional work. On June 18, 2001, Parametrix sent Katspan a letter with the change order it prepared to cover the additional work. Parametrix asked Katspan to sign the final payment estimate and return it if it was acceptable. Katspan never responded, and on July 2, 2001, the City sent Katspan a letter stating that if Katspan did not return the final payment request, the City would unilaterally establish final acceptance of the project. The City received no response, and on September 10, 2001, the City unilaterally closed out the project.
¶ 5 On November 26, 2001, American Safety, surety for Katspan,[4] sent the City a "Request for Equitable Adjustment on Southern Connection Pipeline Project" (Request). CP at 116-321. The document did not comply with the standards set out in the contract for filing a claim. American Safety received no response to the Request until March 14, 2002 (more than 180 days after the final acceptance date), when American Safety left a voicemail message for the City's counsel, stating that it had some ideas for "some possible quick solutions." CP at 329.
¶ 6 The City agreed to enter negotiations, but asked American Safety to provide further information so it could determine whether a quick resolution was possible. American Safety subsequently sent the City two three-ring binders of documents; however, it did not include all of the information that the City needed to evaluate the request. On August 1, 2002, the City sent American Safety a letter in which it asked for further documentation. American Safety indicated that it was having trouble obtaining the requested information. On October 2, 2002, the City reiterated that it was willing to negotiate, but that it would not do so unless American Safety could provide adequate backup information for its claims. The City received no response, and on November 12, 2002, sent American Safety a letter in which it stated that "[w]ithout waiving any of its *57 defenses, LOTT has stated several times that it is willing to negotiate these claims in order to come to a quick resolution." CP at 354. The City asked whether American Safety was still interested in negotiations, as the City had received no response from its last request for information.
¶ 7 On January 22, 2003, American Safety informed the City that it had received four or five boxes of documents from Katspan for the City to review. Upon review, the City discovered that some information was still missing. On April 23, 2003, the City sent American Safety yet another letter requesting certain documentation. The City stated that if it did not receive the requested information by May 16, 2003, it would deny American Safety's claim. On May 14, 2003, American Safety wrote to the City that although it believed it had provided sufficient information, "we are presently determining the feasibility of accommodating LOTT's request for supplemental cost information, or creating the equivalent." CP at 368. The documentation never arrived, and on May 16, 2003, the City denied American Safety's Request.
¶ 8 On July 31, 2003, Thomas Presnell, a claims consultant representing American Safety, e-mailed Paul Pedersen, the City's forensic accountant, asking him whether they could meet to discuss the project and the information the City needed to complete its audit. Pedersen responded that he had been given the green light to discuss the matter. Presnell and Pedersen exchanged a few more e-mails in which they discussed what form the requested information should be in and when they could meet. However, no meeting ever took place.
¶ 9 On May 21, 2004  more than a year after the City denied American Safety's claim  American Safety called the City and said that it had finally obtained the information necessary for the City to evaluate its Request. The City responded that the Request did not comply with the procedures set forth in the contract and that the claim had been denied more than a year prior for lack of information.[5]
¶ 10 On August 17, 2004, American Safety filed suit against the City in Thurston County Superior Court. The trial court granted summary judgment in favor of the City, finding that American Safety did not comply with the contractual provisions and that the City had not waived its right to demand compliance with these agreed upon procedures. The Court of Appeals reversed, finding that whether the City had waived its right to demand compliance with the contractual provisions was an issue of material fact for a fact finder to decide. Am. Safety Cas. Ins. Co. v. City of Olympia, 133 Wash.App. 649, 662, 137 P.3d 865 (2006). The City petitioned for review in this court, which we accepted on June 8, 2007. Am. Safety Cas. Ins. Co. v. City of Olympia, 160 Wash.2d 1017, 162 P.3d 1130 (2007). We must now decide whether the trial court was correct in granting summary judgment or whether an issue of material fact exists as to whether the City waived the contractual provisions.

II

Analysis
¶ 11 We review an order of summary judgment de novo. Jones v. Allstate Ins. Co., 146 Wash.2d 291, 300, 45 P.3d 1068 (2002). Summary judgment is proper "if the pleadings, affidavits, and depositions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Id. at 300-01, 45 P.3d 1068.
¶ 12 The City argues that the Court of Appeals erred when it failed to recognize that the rule of Mike M. Johnson, Inc. v. Spokane County, 150 Wash.2d 375, 78 P.3d 161 (2003), applies. In Mike M. Johnson, we considered whether Spokane county implicitly waived its right to demand compliance with contractual procedures when the county entered into negotiations with Mike M. Johnson, Inc. (MMJ) even after MMJ did not follow the agreed upon procedures. Id. at 377-78, 78 P.3d 161. In that case, the county and MMJ entered into a contract for MMJ to *58 construct two sewer projects. Id. at 378, 78 P.3d 161. Pursuant to the contract, which included the same standard specifications as those at issue in the instant case, the county could revise the scope of MMJ's work through a change order. Id. at 378-79, 78 P.3d 161. If MMJ objected to the change order, the contact specified that it must file an immediate protest. Id. at 379, 78 P.3d 161. Under the terms of the contract, failing to follow the contractual procedures would result in waiver of the claims. Id. at 380, 78 P.3d 161.
¶ 13 During the course of the project the county submitted a change order, and MMJ did not object. Id. at 378-79, 78 P.3d 161. MMJ later sent the county a letter addressing seven points of concern, one of which was the change order. Id. at 380, 78 P.3d 161. The letter indicated that MMJ had to perform additional work to accommodate the change order, which was causing additional costs and delays. Id. at 380-81, 78 P.3d 161. The county responded to MMJ by stating that if MMJ thought it had a claim for additional compensation, it must follow the terms of the contract and submit a claim pursuant to the contractual provisions. Id. at 381, 78 P.3d 161. Correspondence between MMJ and the county continued, and the county stated that it was willing to discuss a settlement and attempt to avoid litigation but that it did not intend to waive any of its contractual defenses. Id. at 381-84, 78 P.3d 161. The parties were unable to resolve the dispute out of court, and MMJ ultimately filed a complaint against the county for additional compensation. Id. at 384, 78 P.3d 161. The trial court found that because MMJ failed to follow the contractual procedures to pursue a claim for additional compensation, its claim failed as a matter of law. Id. at 385, 78 P.3d 161. The Court of Appeals reversed, holding that an issue of material fact existed regarding whether the county's conduct constituted implied waiver. Mike M. Johnson, Inc. v. Spokane County, 112 Wash.App. 462, 471, 49 P.3d 916 (2002).
¶ 14 On appeal before this court, MMJ argued that a reasonable fact finder could determine that the county's act of agreeing to enter into negotiations was evidence of intent to waive the contractual procedures, and thus summary judgment was improper. See Mike M. Johnson, 150 Wash.2d at 391, 78 P.3d 161. We disagreed. We held that, absent waiver, failure to comply with contractual procedures bars relief and that "waiver by conduct `requires unequivocal acts of conduct evidencing an intent to waive,'" Id. at 391, 78 P.3d 161 (emphasis added) (quoting Absher Constr. Co. v. Kent Sch. Dist. No. 415, 77 Wash.App. 137, 143, 890 P.2d 1071 (1995)). By repeatedly stating that it was not waiving its rights, the county clearly did not unequivocally waive those rights and thus summary judgment in favor of the county was proper. Id. at 392, 78 P.3d 161.
¶ 15 In the instant case, the City asserted in correspondence that it reserved its right to demand strict compliance with the contractual procedures and that it was willing to negotiate "[w]ithout waiving any of its defenses." CP at 327, 338, 354. American Safety points out, however, that the City expressly reserved its rights just twice prior to the end of the project, and just once after the project's completion. Appellant's Reply Br. at 5. In other correspondence, the City did not reference the contractual provisions and evidenced a willingness to negotiate in order to avoid litigation.[6] According to American Safety, this distinguishes the case from Mike M. Johnson, where the county "continuously" asserted its rights. Resp't's Suppl. Br. at 12 (emphasis omitted). The Court of Appeals agreed, finding that because "the City referred to strict compliance with the contract terms in only three instances," the City's actions were "equivocal" and thus a finder of fact must decide whether the City implicitly waived its rights. Am. Safety, 133 Wash.App. at 659, 661, 137 P.3d 865 (emphasis added).
*59 ¶ 16 The Court of Appeals misapplied the law. While in some cases equivocal conduct does create an issue of material fact, in which case it would be improper to grant summary judgment, such ambiguity here means that the conduct by definition was not unequivocal, as is required for waiver: "[W]aiver by conduct `requires unequivocal acts of conduct evidencing an intent to waive,'" Mike M. Johnson, 150 Wash.2d at 391, 78 P.3d 161 (emphasis added) (quoting Absher, 77 Wash. App. at 143, 890 P.2d 1071). At most, the fact that the City agreed to consider negotiations  and we point out that the City never did enter into negotiations, for it never received the information it required as a prerequisite to doing so  constitutes equivocal conduct.[7] Equivocal conduct by definition cannot be unequivocal, and the Court of Appeals thus erred when it found that "the equivocal nature of the City's conduct" warranted a trial on the merits. Am. Safety, 133 Wash.App. at 661, 137 P.3d 865 (emphasis added). Given that the City three times expressly asserted that it was not waiving its defenses, a reasonable juror could not find that the City unequivocally did exactly the opposite. Amicus Washington School Construction Alliance points out that "[t]he `unequivocal acts' standard is demanding for good reason. Waiver permanently surrenders an established contractual right." Br. of Amicus Curiae Wash. State Sch. Constr. Alliance at 11 (emphasis added). Because American Safety admittedly did not comply with the contractual provisions, and because the City did not unequivocally waive its right to demand compliance with these provisions, we find that the trial court was correct in granting summary judgment to the City.
¶ 17 American Safety also argues that Mike M. Johnson can be distinguished because there, the county and MMJ were discussing seven different issues, only one of which concerned the change order and whether MMJ followed the contractual procedures. Therefore, according to American Safety, "continued negotiations of the claim [in Mike M. Johnson] were insufficient to create a waiver because those negotiations related several issues, not just the change order." Appellant's Opening Br. at 29.
¶ 18 It is unclear why this distinction should result in a different outcome here. In Mike M. Johnson we noted the fact that the county and MMJ were negotiating several issues in order to point out that if we found that entering into negotiations constituted an implicit waiver of contractual rights, then the county likely would have had to stop all negotiations on all issues for fear of waiving the mandatory claim provisions. 150 Wash.2d at 392, 78 P.3d 161. The same policy consideration is at issue here. Were we to find that by entering into negotiations a party waives its contractual rights, we would frustrate the negotiation and settlement process. Washington law strongly favors the public policy of settlement over litigation. E.g., City of Seattle v. Blume, 134 Wash.2d 243, 258, 947 P.2d 223 (1997) ("[T]he express public policy of this state . . . strongly encourages settlement."); Seafirst Ctr. Ltd. P'ship v. Erickson, 127 Wash.2d 355, 366, 898 P.2d 299 (1995) (referring to "Washington's strong public policy of encouraging settlements"); Haller v. Wallis, 89 Wash.2d 539, 545, 573 P.2d 1302 (1978) ("[T]he law favors amicable settlement of disputes. . . ."). If we found that by agreeing to enter into negotiations the City waived its rights under the contract, we would deter future parties from attempting settlement before resorting to use of the courts. Such result would be directly contrary to established public policy and thus we find that entering into settlement negotiations, without anything more, does not constitute an implied waiver of contractual defenses.

Attorney Fees
¶ 19 Because the City has prevailed here, it is entitled to reasonable attorney fees and costs. RCW 39.04.240; RAP 18.1.

*60 III

Conclusion
¶ 20 Implied waiver of contractual rights requires unequivocal acts, and here the City's acts were, at most, equivocal. Agreeing to enter into negotiations, without more, does not constitute an implied waiver of contractual rights. Therefore, since American Safety admittedly did not comply with the contractual provisions and thus waived its claim to additional compensation, the trial court was correct in granting summary judgment to the City. The decision of the Court of Appeals is reversed.
WE CONCUR: Chief Justice GERRY L. ALEXANDER, Justice TOM CHAMBERS, Justice CHARLES W. JOHNSON, Justice SUSAN OWENS, Justice BARBARA A. MADSEN, Justice MARY E. FAIRHURST, Justice RICHARD B. SANDERS and Justice JAMES M. JOHNSON.
NOTES
[1] American Safety is the surety for Katspan, Inc., the original party to the contract.
[2] The City acts on behalf of the Lacey, Olympia, Tumwater and Thurston County Wastewater Management Partnership (LOTT). Therefore, some correspondence referred to herein references "LOTT." All acts undertaken by LOTT are binding on the City.
[3] The contract consisted primarily of the 2000 Washington State Department of Transportation Standard Specifications for Road, Bridge, and Municipal Construction, its American Public Works Association supplement, and the supplemental specifications.
[4] Due to financial difficulties, Katspan ultimately assigned its rights and obligations under the contract to American Safety.
[5] American Safety does not allege that the information the City requested was unnecessary to resolve the dispute or that the City's repeated requests for the information were a pretext designed to prevent American Safety from achieving compliance with the contractual provisions.
[6] American Safety argues that the City's "mention of potential litigation" evidenced its intent to waive the 180-day suit limitation period and "allow" American Safety to file a legal claim. Appellant's Reply Brief at 4. The contractual provisions do not establish that American Safety must seek the City's "permission" in order to file a lawsuit; rather, they provide a defense to any claim that American Safety might bring.
[7] We stress that the discussions between the City and American Safety took place after the work was completed, and thus the situation was not one where the City was directing American Safety to perform its obligations under the contract while the parties negotiated the contractual dispute. Had the City directed American Safety to focus on performing work rather than worrying about assembling documentation to comply with contractual provisions, then such situation could arguably be construed as implied waiver. However, as the trial court pointed out, here "the horse ha[d] left the barn." Transcript at 17.