IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| GRAHAM CONTRACTING, LTD., a Washington corporation, | No. 83494-1-I |
| Appellant, | DIVISION ONE |
| v. | |
| CITY OF FEDERAL WAY, a Washington municipal corporation, | UNPUBLISHED OPINION |
| Respondent. | |

BOWMAN, J. — Graham Contracting Ltd. appeals the trial court's order dismissing its claims for additional compensation relating to a "Public Works Contract" with the city of Federal Way (City). Because Graham did not follow the disputes and claims procedures in the contract, Graham waived its ability to bring a claim for additional compensation. We affirm and remand for further proceedings.

FACTS

In June 2016, the City requested bids for "Phase V" of the Pacific Highway South improvement project. The project involved placing utilities underground, improving drainage, installing and modifying traffic signals and lighting, landscaping, laying new pavement, and building curbs, gutters, sidewalks, medians, and retaining walls. The City assigned its "Street Systems Project

Engineer" John Mulkey to oversee the bidding process. Graham submitted the lowest bid for the project at $16,701,329.60.

On August 23, 2016, the City executed a "Construction Management Services" contract with KPG PS.[1] The services KPG specified in the contract included design support, project management, documentation control, inspection, materials testing, public involvement, and "contract administration during the construction of the [Phase V] project." KPG named Ken Gunther as the "Project Engineer," or "Resident Engineer," of the Phase V project.

On August 25, 2016, the City awarded Graham the project and the parties executed a Public Works Contract. The contract allocated Graham "350 working days" to complete the project. It defined the scope of the work and incorporated into the contract the 2016 edition of Washington State Department of Transportation's STANDARD SPECIFICATIONS FOR ROAD, BRIDGE, AND MUNICIPAL CONSTRUCTION (Standard Specifications).

Graham began work on September 12, 2016.[2] On November 3, 2016, Graham sent Mulkey and Gunther a "Notice of Delay," explaining that the joint utility trench (JUT) unexpectedly needed to be complete before workers could remove or relocate the existing utility lines from overhead poles. Graham believed the issue would "significantly impact the project schedule," but it would have to later advise the City and KPG "regarding the actual extension of time and impact costs when we are better able to assess the effect of the occurrence."

---

[1] Now KPG Psomas.

[2] September 12, 2016 plus 350 working days results in an end date around February 9, 2018.

2

On November 8, 2016, Gunther e-mailed Graham a letter in response. He explained that under the contract, "power and communication distribution lines will remain on these poles until the entire underground distribution system is in place," and that

> [t]he Contractor [(Graham)] is responsible for coordinating and planning adjacent work with the appropriate utility to avoid impacts and delays to the project schedule. . . . [T]herefore; the City of Federal Way is denying Graham Contracting's [Notice of Delay] dated 11/03/16.

On December 2, 2016, Graham replied to Gunther and Mulkey. Graham disagreed with KPG's interpretation of the contract, explained its position in more detail, and requested a meeting to discuss the issue. Two weeks later, Gunther responded that the City "maintains its position as per [his letter] dated November 8, 2016." Meanwhile, Graham kept working on the project.

On December 22, 2016, Graham met with the City to discuss the delay and added expense related to the JUT work. On January 20, 2017, Marwan Salloum, the director of the Public Works Department for the City, sent Graham a letter stating that "the City's position remains unchanged." Salloum explained that Graham "is not entitled to any additional working days to complete the Project," and as much as Graham is claiming a "changed condition" under the contract, it "failed to properly protest the City's determination in accordance with" the Standard Specifications, "waiv[ing] any claims related thereto by failing to follow the protest and claim requirements of the Contract."

On February 3, 2017, Graham sent Mulkey a "Supplemental to Notice of Protest re: Joint Utility Trench (JUT) Construction Delays Pursuant to Standard

3

Specification Section 1-04.5,"[3] arguing that the City "incorrectly determined" that Graham has no right to any additional working days to complete the project and that it waived any claims related to changed conditions under the contract. It notified the City that "Graham protests both determinations" and that it estimated the extra work would delay the project around 110 days, amounting to $973,101.80 in additional costs.

Over the next several months, Graham continued to send the City notices of protest related to the JUT delay, requesting more time and money. On July 7, 2017, Gunther sent Graham a letter, saying the City "understand[s] that Graham is protesting the Engineer's denial of Graham's request to extend the Contract," but "[i]f Graham was unhappy with the City's determinations on this issue, it was required to protest those decisions and file a Claim in strict accordance with the Contract notice and claim procedures." The City explained that Graham should follow the "dispute and claim procedures" under the contract for those issues and claims "that have not already been waived or previously determined by the City or its Engineer."

A week later, Graham responded. It claimed that it need not follow the disputes and claims procedures under the contract to contest Gunther's November 8, 2016 decision because the procedures apply to only determinations made by the "Project Engineer."[4] And, according to Graham, "the City identified

---

[3] The letter appears to be a supplement to a notice of protest Graham submitted on January 27, 2017 for an unrelated issue.

[4] The Standard Specifications define "Engineer" as the "Contracting Agency's representative who directly supervises the engineering and administration of a construction Contract." The contract clarifies that "Project Engineer" is the "[s]ame as Engineer."

John Mulkey in the contract documents as the Project Engineer for this Project," not Gunther. Graham told the City it "intends to file a Claim against the City of Federal Way for recovery of all current and future losses incurred by Graham resulting from the impacts and issues noted in this and [earlier] letters."

On December 22, 2017, Graham filed a claim for damages with the City, seeking $10,777,440.22 for the "cumulative impact" of "extensive and ongoing changes required on the Project, including but not limited to differing site conditions, design conflicts/omissions, untimely third-party utility performance, and undisclosed utility conflicts." The City denied the claim. It noted the claim amounts to "a conglomerate of various issues" that it already rejected. It determined that Graham did not follow the proper disputes and claims procedures or timely provide the minimum information required to accompany a claim under the contract. Still, the City reviewed the "limited material" Graham provided and found the claim "is without merit."

In February 2020, Graham supplemented its claim, seeking a total of $11,974,791 in compensation.[5] The City denied most of the second claim because Graham had again not followed proper notice procedures and much of the claim lacked merit.

Graham sued the City in October 2020, alleging breach of contract, unjust enrichment, and violation of the Prompt Payment Act, chapter 39.76 RCW. In April 2021, the City moved for partial summary judgment, arguing that Graham waived its right to claim additional compensation related to the JUT delays

_____

[5] It appears Graham finished the project around this time.

5

because it failed to "properly or timely" meet the contract's notice provisions. Graham also moved for partial summary judgment, arguing that it had no duty to provide notice for claims related to the JUT issue because Gunther denied its request for more time and compensation, and he was not the "contractually designated 'Project Engineer.' "

On June 25, 2021, the trial court granted the City's motion for partial summary judgment and denied Graham's motion. The court concluded that genuine issues of material fact remained about who served the role of Project Engineer under the contract, but that this issue was not material because Graham must follow the contract's disputes and claims procedures to file any claim for additional compensation, which it did not do.

Graham moved for reconsideration. In support of its motion, Graham submitted over 800 pages of new evidence. It claimed for the first time that Graham properly protested several unilateral change orders unrelated to the JUT issue and that the City improperly withheld liquidated damages.

On September 21, 2021, the trial court granted the motion for reconsideration in part. It clarified that it was dismissing only those claims related to the delays and costs stemming from the JUT issue. Then, on November 3, 2021, the court granted the parties' stipulated order for final judgment under CR 54(b), issued findings in support of its order, and stayed the parties' remaining claims.

Graham appeals.

ANALYSIS

Graham argues the trial court erred by granting partial summary judgment for the City. We disagree.

We review rulings on summary judgment de novo, performing the same inquiry as the trial court. Kruse v. Hemp, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993). Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c). A "material fact" is one that affects the outcome of the litigation. Owen v. Burlington N. & Santa Fe R.R., 153 Wn.2d 780, 789, 108 P.3d 1220 (2005). We view all facts and reasonable inferences in the light most favorable to the nonmoving party. Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 164, 273 P.3d 965 (2012).

We interpret contracts as a question of law. Renfro v. Kaur, 156 Wn. App. 655, 661, 235 P.3d 800 (2010). If the contract language is clear and unambiguous, we will enforce the contract as written. RDS AAP, LLC v. Alyseka Ocean, Inc., 190 Wn. App. 305, 316, 358 P.3d 483 (2015). The primary objective in contract interpretation is to determine the mutual intent of the parties at the time they execute the contract. Thomas Center Owners Ass'n v. Robert E. Thomas Tr., 20 Wn. App. 2d 690, 699, 501 P.3d 608, review denied, 199 Wn.2d 1014, 508 P.3d 679 (2022). Washington follows the objective manifestation theory of contract interpretation, under which we try to arrive at the intent of the parties by focusing on the objective manifestations of the agreement rather than on the unexpressed subjective intent of the parties. Id. at 700. We interpret

contracts in a manner that will not render provisions of the contract meaningless. GMAC v. Everett Chevrolet, Inc., 179 Wn. App. 126, 135, 317 P.3d 1074 (2014). And we read the contract as a whole, avoiding interpretations that lead to absurd results. Kelley v. Tonda, 198 Wn. App. 303, 316, 393 P.3d 824 (2017).

Disputes and Claims Procedures

Graham argues it did not need to follow the disputes and claims process under the contract to request additional compensation for work related to the JUT delays.[6] We disagree.

Washington law generally requires that contractors follow contractual notice provisions unless a party unequivocally waives those procedures. Mike M. Johnson, Inc. v. County of Spokane, 150 Wn.2d 375, 386, 78 P.3d 161 (2003). Here, several "Sections" of the Standard Specifications describe the disputes and claims requirements. Under Standard Specifications Section 1-09.11, "Disputes and Claims," when protests occur during a contract, "the Contractor shall pursue resolution through the Project Engineer. The Contractor shall follow the procedures outlined in Section 1-04.5." Section 1-04.5, "Procedure and Protest by the Contractor," provides, in pertinent part:

> If in disagreement with anything required in a change order, another written order, or an oral order from the Engineer, including any direction, instruction, interpretation, or determination by the Engineer, the Contractor shall:

---

[6] Graham also argues that the trial court erred by dismissing its claims for several unilateral change orders and its claim to recover inappropriately withheld liquidated damages because it complied with the contractual notice requirements for those claims. But Graham raised those issues for the first time on reconsideration. And a party may not raise for the first time on reconsideration new theories that it could have raised before the trial court issued an adverse ruling. JDFJ Corp. v. Int'l Raceway, Inc., 97 Wn. App. 1, 7, 970 P.2d 343 (1999); see CR 59. As a result, we do not consider them.

1. Immediately give a signed written notice of protest to the Project Engineer or the Project Engineer's field Inspectors before doing the Work; [and]
2. Supplement the written protest within 14 calendar days with a written statement and supporting documents . . . [.]
. . . .
. . . .
The Engineer will evaluate all protests provided the procedures in this section are followed. . . .
. . . .
If the Contractor does not accept the Engineer's determination then the Contractor shall pursue the dispute and claims procedures set forth in Section 1-09.11. . . .
By failing to follow the procedures of Sections 1-04.5 and 1-09.11, the Contractor completely waives any claims for protested Work.

Section 1-09.11 states that if dispute negotiations using the procedures outlined in Section 1-04.5 fail to provide satisfactory resolution of protests, "then the Contractor shall provide the Project Engineer with written notification that the Contractor will continue to pursue the dispute in accordance with the provisions of Section 1-09.11."  The written notification "shall be provided within [seven] calendar days after receipt of the Engineer's written determination that the Contractor's protest is invalid pursuant to Section 1-04.5."

Standard Specifications Section 1-09.11(2) provides, "If the Contractor claims that additional payment is due and the Contractor has pursued and exhausted all the means provided in Sections 1-04.5 and 1-09.11(1)[7] to resolve a dispute," the contractor may file a claim.  Section 1-09.11(2) also states that the contractor "agrees to waive any claim for additional payment" if it does not provide the written notifications under Section 1-04.5, and that all claims "shall be submitted to the Project Engineer."

_____
[7] Section 1-09.11(1) outlines the role of the "Disputes Review Board."

The plain language of the contract requires the contractor to comply with the protest procedures outlined under Standard Specifications Section 1-04.5 before it may bring a claim for additional compensation under Section 1-09.11. And here, Graham did not immediately provide Gunther or Mulkey a written notice of protest related to Gunther's November 8, 2016 denial of its request for additional time and compensation before it completed the JUT work. Instead, almost a month after Gunther denied the request, Graham sent Gunther and Mulkey a letter explaining why it disagreed with the decision. Then, Graham pursued resolution through the director of the City's Public Works Department. Finally, on February 3, 2017, almost three months after Gunther denied Graham's request, Graham filed its Supplemental to Notice of Protest re: Joint Utility Trench (JUT) Construction Delays Pursuant to Standard Specification Section 1-04.5. As much as that document amounts to a notice of protest, it was untimely under Sections 1-04.5 and 1-09.11.

Graham argues, "The trigger for [its] obligation to protest (and otherwise comply with Sections 1-04.5 and 1-09.11) is an action by a specific contractually defined person — 'the Engineer.' " It points to the language in Section 1-04.5 that states the contractor must follow the proscribed procedures if "in disagreement with anything required in a change order, another written order, or an oral order from the Engineer, including any direction, instruction, interpretation, or determination by the Engineer." According to Graham, this language limits compliance with the procedural requirements of Section 1-09.11 to those orders issued by only the Engineer. So, a jury must determine whether

10

Gunther was "the Engineer" before it can conclude that Graham failed to properly protest his decision.

Graham is correct that it must comply with the procedures of Section 1-04.5 to protest an order or decision by the Project Engineer. But under Section 1-09.11, it must also pursue "resolution through the Project Engineer" and "follow the procedures outlined in Section 1-04.5" before filing any claim for additional compensation. Only if "the negotiations using the procedures outlined in Section 1-04.5 fail" to resolve the dispute can the contractor pursue a claim. Similarly, Section 1-09.11(2) provides that the contractor must pursue and exhaust "all the means provided in Sections 1-04.5 and 1-09.11(1)" to resolve a dispute before it may file a claim for additional payment. Nothing in these sections narrow the procedural requirement to claims arising only from orders or decisions of the Project Engineer. Instead, the provisions as a whole reflect an intent for the parties to seek resolution of all disputes through the Project Engineer before filing a claim for additional compensation. See Realm, Inc. v. City of Olympia, 168 Wn. App. 1, 5, 277 P.3d 679 (2012) (when contract provisions seem to conflict, we will harmonize them to give effect to all provisions).

Because Graham did not follow the contractual disputes and claims requirements through either Gunther or Mulkey related to the JUT delays, it waived any claim for additional payment. The trial court did not err by granting partial summary judgment for the City.

11

Waiver

Graham argues that even if it failed to follow the disputes and claims procedures, the City's conduct waived its right to notice of Graham's claims for unexpected site and forced account issues because it created an alternative process to resolve those disputes. Again, we disagree.

A party to a contract may expressly or through its conduct waive a contract provision that is meant for its benefit. Johnson, Inc., 150 Wn.2d at 386. Waiver by conduct, however, " 'requires unequivocal acts of conduct evidencing an intent to waive.' " Id. (quoting Absher Constr. Co. v. Kent Sch. Dist. No. 415, 77 Wn. App. 137, 143, 890 P.2d 1071 (1995)). Attempting to negotiate resolution of issues does not amount to an unequivocal waiver. Am. Safety Cas. Ins. Co. v. City of Olympia, 162 Wn.2d 762, 771, 174 P.3d 54 (2007).

Graham says the City waived contractual disputes and claims requirements for unexpected site and force account issues because the parties had a process by which they met weekly to try to resolve those issues. But those meetings clearly aimed to resolve conflicts short of the contractual claims process. Graham offers no evidence that the City intended the meetings to replace the contractual disputes and claims requirements.[8] Graham fails to show waiver by conduct.

---

[8] Graham also argues that the disputes and claims requirements do not bar its claims for cumulative impact, breach of implied warranty, and unjust enrichment. But its "cumulative impact" claim amounts to merely a series of claims subject to the disputes and claims procedures. And under Standard Specifications Section 1-09.13(1), "Claims Resolution," Graham must "proceed under the administrative procedures in Sections 1-04.5 and 1-09.11" before seeking litigation. Graham offers no compelling argument about why Section 1-09.13 does not apply to its breach of implied warranty and unjust enrichment claims.

Attorney Fees

The City requests attorney fees and expenses on appeal.  We may award attorney fees and costs on appeal if applicable law grants a party the right to recover such expenses.  RAP 18.1(a).  In an action arising out of a Public Works Contract in which a public body is a party, "there shall be taxed and allowed to the prevailing party as a part of the costs of the action a reasonable amount to be fixed by the court" as attorney fees.  RCW 39.04.240(1); RCW 4.84.250.  "The defendant . . . shall be deemed the prevailing party . . . if the plaintiff . . . in an action for damages . . . recovers nothing."  RCW 4.84.270.  Because the City is the prevailing party on appeal, we grant the City's request for attorney fees and costs subject to compliance with RAP 18.1.

We affirm the trial court's order granting the City's motion for partial summary judgment and its order on reconsideration and remand for further proceedings.

_____
Brennan, J

WE CONCUR:

_____         _____
Díaz, J.                                 Coburn, J.